**UNITED STATES of America,
Appellee,**

v.

**Robert Stephen GARRETT, Appellant.**

**No. 75–1157.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1975.

Decided July 23, 1975.

John D. Connaghan, St. Louis, Mo., for appellant.

Richard E. Coughlin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, WEBSTER, Circuit Judge, and DEVITT, Chief District Judge.*

GIBSON, Chief Judge.

Robert Stephen Garrett appeals his jury conviction and sentence of three years imprisonment for a violation of 18 U.S.C. § 2421,[1] popularly known as the

---

\* The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

1. 18 U.S.C. § 2421 (1970) provides in pertinent part:

Whoever knowingly transports in interstate or foreign commerce * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice * * *

* * * * * *

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Mann Act. Garrett's conviction was based upon his activities with Shirley Jean Mosely, age 16, in March and April of 1974 in St. Louis, Missouri, and Las Vegas, Nevada. Defendant first met Mosely in March, 1974. They subsequently began living together, first in St. Louis City and later in an apartment in St. Louis County. During the short time they lived together in Missouri, Mosely testified that she engaged in an estimated 50 acts of prostitution and gave money therefrom to the defendant. Around April 20, 1974, Garrett suggested a trip to Las Vegas because there was money to be made there. It was Mosely's understanding that Garrett meant prostitution. While in Las Vegas, Mosely did engage in prostitution and turned over to Garrett the proceeds derived from that activity.

Garrett presents several questions on this appeal. We turn first to his argument that the Mann Act is unconstitutional. He claims it denies equal protection because it is only unlawful to transport females across state lines for immoral purposes; people transporting males across state lines for immoral purposes are not subject to federal prosecution. He argues the statute thus bases conviction upon a "suspect" classification (sex) and must be subjected to strict judicial scrutiny.

■ As Garrett is a defendant and not the unprotected male victim of such an interstate transportation, we would question his standing to object. Additionally, we have no occasion to determine in this case whether a classification based on sex is inherently suspect and thus subject to a strict judicial scrutiny, *see Frontiero v. Richardson,* 411 U.S. 677, 688, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), or whether the test should be whether the classification is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson, supra* at 683, 93 S.Ct. 1764.

■ It is rather late in the history of the Mann Act to still be contending for its unconstitutionality. The Act has been consistently upheld beginning with the early decisions in *Caminetti v. United States,* 242 U.S. 470, 491–92, 37 S.Ct. 192, 61 L.Ed. 442 (1917), and *Hoke v. United States,* 227 U.S. 308, 323, 33 S.Ct. 281, 57 L.Ed. 523 (1913). Moreover, though novel, defendant's equal protection argument is untenable. The persons affected by a criminal statute are defendants. Garrett does not argue that similarly situated defendants are treated disparately on the basis of sex. *Cf. Frontiero v. Richardson, supra; Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The statute may be violated by either males or females; it is thus sexually neutral and does not raise questions of an illegal classification. *See United States v. Caesar,* 368 F.Supp. 328, 333 (E.D.Wis.1973). *Compare McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). The fact that the class of possible victims is limited to females does not present defendant with a ground to attack the statute's constitutionality.

At the time the statute was enacted it was directed at stopping the traffic in women "by procurers who forced victims to lead a life of debauchery." *United States v. Wheeler,* 444 F.2d 385, 386 (10th Cir. 1971). As this case illustrates, such activities have not disappeared in over 60 years since enactment of the Mann Act. We would not deny the possibility that interstate transportation of males for immoral purposes exists today as well, but that furnishes no grounds for voiding the present statute. As noted in *Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955):

> The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.

The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than invidious discrimination. (Citations omitted.)

Garrett argues the trial court erred in permitting FBI agent Keith Hunter to testify as to an oral statement given by Garrett on November 5, 1974. Hunter interviewed Garrett at the Cole County, Missouri, jail and obtained a signed waiver of rights. Hunter testified that Garrett admitted Mosely's acts of prostitution in St. Louis and Las Vegas, and that he said they left St. Louis due to fear their prostitution activities had been discovered. Defendant claims it was error for the trial court to admit Hunter's testimony without a specific finding of voluntariness under 18 U.S.C. § 3501(a) (1970).[2]

▮ The trial court held a pretrial hearing on the confession and denied suppression. The defendant claims this was an inadequate finding of voluntariness, relying upon *United States v. Goss,* 484 F.2d 434, 436 (6th Cir. 1973). The District Court in ruling upon defendant's motion for new trial made a specific finding that the statement was voluntarily given. Assuming *arguendo*[3] that the denial of the suppression motion was insufficient to satisfy § 3501, we think the defect, if any, was cured by this subsequent finding. *See United States v. Goss, supra* at 437; *United States v. Keeble,* 459 F.2d 757, 762 (8th Cir. 1972), *reversed on other grounds,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

▮ Garrett challenges the admission of Mosely's testimony regarding acts of prostitution which occurred after the interstate transportation was completed. This testimony was properly admitted. Testimony as to acts occurring within a reasonable time before and after the interstate transportation is relevant to show the purpose of the transportation. *United States v. Tyler,* 424 F.2d 510, 512 (10th Cir.), *cert. denied,* 400 U.S. 839, 91 S.Ct. 78, 27 L.Ed.2d 73 (1970); *Wiley v. United States,* 257 F.2d 900, 906 (8th Cir. 1958).

▮ Defendant also challenges the sufficiency of the evidence and the trial court's instructions on circumstantial evidence and proof of intent by circumstantial evidence. Our review of the record convinces us that these contentions are without merit.

The judgment of conviction is affirmed.

---

2. That section provides:

> * * * [A] confession * * * shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

3. It would appear that to require as a matter of proper practice and procedure a black letter rote recitation that the confession is voluntary where a plenary pretrial hearing has been held on a motion to suppress the confession as being involuntary and the motion denied, is a triumph of form over substance and a legal nicety that the law can well do without. The sole and only purpose of the pretrial hearing to suppress the confession was to determine the voluntariness *vel non* of the confession. The trial judge unmistakenly makes a determination that the confession was voluntary by his ruling denying suppression. To require an additional rote recitation brings the law into disrepute and serves no legitimate interest of the defendant or the public in safeguarding the integrity of the fact-finding process.