Gary DeFRANCES

v.

Edwin EDWARDS, William Guste and Henry N. Brown

Civ. A. No. 77–0458.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Sept. 21, 1977.

Sam N. Gregorio, Gregorio & Frazier, Shreveport, La., for plaintiff.

A. Mills McCawley, Asst. Atty. Gen., State of Louisiana, Shreveport, La., for defendants.

OPINION

STAGG, District Judge.

Gary DeFrances filed this action on May 3, 1977, praying that the Court declare Louisiana's "B-drinking" statute, La.R.S. 26:88(8), unconstitutional and that the Court enjoin the Governor, the Attorney General, and the District Attorney for the Twenty-Sixth Judicial District of Louisiana from enforcing the law. The defendants moved to dismiss the complaint on May 25, 1977, alleging that DeFrances had no standing to sue, therefore the Court had no subject matter jurisdiction. U.S.Const. art. III. The Court denied the motion on June 23, 1977, in a memorandum ruling. The case came on for trial on August 29, 1977, and the Court took the decision under advisement at the close of the evidence. For the reasons assigned below, there must be judgment in favor of defendants, dismissing plaintiff's claim on the merits.

FINDINGS OF FACT

1. Gary DeFrances is an adult male citizen of the United States, a resident of Bossier City, Bossier Parish, Louisiana. He works as a bartender at the Black Knight Lounge on U.S. Highway 80 in Bossier City. The Black Knight Lounge is located on a stretch of Highway 80 that contains a number of night spots; the stretch is commonly known as the "Bossier Strip".

2. The Black Knight Lounge, like several other spots on the Bossier Strip, employs women to dance in skimpy costumes and to serve drinks to the patrons of the lounge. Several of the employees of the Black Knight and other lounges have been arrested under the "B-drinking" statute for soliciting drinks for themselves for compensa-

tion or for allowing the practice to occur. DeFrances has not been arrested.

3. The Louisiana statute on which the arrests were based is La.R.S. 26:88(8):

"No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:

\* \* \* \* \* \*

"(8) Employ or permit females, commonly known as B girls, to solicit patrons for drinks and to accept drinks from patrons and receive therefor any commission or remuneration in any other way."

Both men and women have been arrested for violation of the statute.

4. The operation of a B-drinking practice follows a general pattern. A man enters a lounge. He is greeted by a costumed female who directs him to the bar or to a table. At a table she sits with him and asks him to buy her a drink. At the bar, she will sit with him and either she or the bartender will ask him to buy her a drink. The girl will remain with the patron until it is her turn to dance or wait tables, then she will leave to return later.

5. A key to the success of the operation is the sexually exciting atmosphere. Many of the B-girls insinuate or promise sexual favors to entice the patrons to continue buying them drinks. Very often the drinks contain little or no alcohol, as a successful B-girl may solicit between 40 and 60 drinks in an evening. The girl's drink costs substantially more than the man's.

6. On numerous occasions unsuspecting customers have found themselves shortchanged or their bills padded. Some violent disruptions have resulted from confrontations over such practices.

7. In addition, many of the women are treated almost like white slaves. Many of them are indebted to their employers for food, shelter, costumes and the like. Some have been threatened with bodily harm if they did not perform properly. A few men have extracted sexual favors through duress.

8. The state has found no establishments that employ "B boys" to solicit drinks from customers for compensation.

CONCLUSIONS OF LAW

1. Gary DeFrances has standing to challenge the constitutionality of the statute in question on grounds that it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

2. The Louisiana B-drinking statute clearly aims at prohibiting conduct by women that is lawful for men, that is, the solicitation of drinks for themselves from customers in return for compensation. Statutory classifications that distinguish between men and women are subject to scrutiny under the Fourteenth Amendment's Equal Protection Clause. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The state must justify the distinction. *Id.* The standard of scrutiny and justification is unclear.

3. The strongest requirement of justification was stated by Justice Brennan in a plurality opinion in *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). He opined that the state must show that the distinction must "serve important governmental objectives and must be substantially related to achievement of those objectives." 429 U.S. at 197, 97 S.Ct. at 457. No other Justice joined him or disagreed with him in that specific assessment. Justice Brennan was relying on *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), as authority for his proposition. But *Reed* does not go nearly so far as *Craig.* Rather, *Reed* states the familiar rational relationship test:

"A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'

*Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). The question presented by this case, then, is *whether a difference in sex of competing applicants for letters of administration bears a rational relationship to a state objective . . . .*" 404 U.S. at 76, 92 S.Ct. at 254. (Emphasis added.) The test for justification, then, must be considered to be *Reed's* test, as *Craig* relies on *Reed.* The state must show that the classification because of sex bears a rational relationship to a valid state objective.

■ 4. The state has a valid objective in preventing commercial exploitation through sexual inducements. In addition, the state may legitimately seek to prevent violence and extortion. All of these activities, whether *caused* by B-drinking by females or not, are *associated* with B-drinking by females. In the state's experience, the same activities have not been associated with the solicitation of drinks for themselves for compensation by men. Thus, the distinction does bear a rational relationship to a valid state objective. The statute passes muster under the Equal Protection Clause.

5. Plaintiff has cited *White v. Flemming,* 374 F.Supp. 267 (E.D.Wis.1974), *aff'd,* 522 F.2d 730 (7th Cir. 1975), and *Daugherty v. Daley,* 370 F.Supp. 338 (N.D.Ill.1974), as condemning statutes similar to the one at issue here. The cases do not support his position. In *White,* the statute was far broader than the one at issue and assumed a certain relationship between all men and all women. The statute forbade female employees from sitting with male patrons at a certain class of lounges. The statute in *Daugherty* was overbroad because it could apply both to female employees and to female customers.

6. There should be judgment in favor of defendants and against plaintiff, dismissing plaintiff's claim on the merits.