**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Randy BANKSTON, a/k/a Val,
Defendant-Appellant.**

No. 78–5417.

United States Court of Appeals,
Fifth Circuit.

Sept. 28, 1979.

Rehearing Denied Oct. 31, 1979.

Albert S. Low, Jr., Houston, Tex. (Court-appointed), Charles Rice Young, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., John M. Potter, George A. Kelt, Jr., James S. Dougherty, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

Appellant Randy Bankston was convicted of conspiracy to kidnap under 18 U.S.C. § 1201(c), conspiracy to transport a woman interstate for purposes of prostitution under 18 U.S.C. § 371, kidnapping under 18 U.S.C. §§ 1201(a) and 1202, and transporting a woman interstate for purposes of prostitution in violation of 18 U.S.C. §§ 2421 and 2422, commonly known as the Mann Act. Appellant challenges the validity of his convictions. He asserts that there was insufficient evidence to prove either a conspiracy to kidnap or a conspiracy to violate the Mann Act; that the government, by submitting both the substantive and the conspiracy counts of the indictment, violated appellant's fifth amendment right not to be placed in jeopardy twice for the same offense; that the trial court erred in admitting statements made by appellant's coconspirators; that certain evidence seized from his coconspirators was improperly admitted; that the Mann Act unconstitutionally violates the equal protection clause of the fourteenth amendment; and that the court reporter's failure to include, in the record on appeal, the defense counsel's objections to the court's charge requires reversal of his convictions. After a careful consideration of the points raised by the appellant, we reverse appellant's conviction for conspiracy to violate the Mann Act and affirm his convictions on the other three counts.

On January 13, 1978, appellant Bankston abducted at gunpoint Patricia Krauss and her daughter Rachel from their West Hollywood, California, apartment and took them to another apartment. At the second apartment, Bankston gave the two women who were there, Susan Michael and Delia Rico, $500 to watch the Krausses. He later took Patricia Krauss from the apartment and left Rachel with the two women. Bankston drove Patricia Krauss from California to Texas; on the way, he told her that he wanted her to prostitute herself, that she could get $25 to $40 for each act of sexual intercourse, and that he would release her when he had realized $2,200 from her efforts. After arriving in Houston, they went to the White House Motel, where Ms. Krauss rented a room and registered in her name. Later, at Bankston's Houston apartment, Bankston told Krauss about a restaurant in the area where she could pick up men, how she could work out of the motel room she had secured, and how he would get the money from her. The following day, January 16, 1978, as Bankston was driving her to the motel, Krauss escaped by jumping from the car. After her escape, Ms. Krauss reported the kidnapping to the Houston Police Department and related the approximate location of the appellant's apartment. She also described the two women with whom Bankston had left her daughter Rachel. Officers of the Houston Police Department with whom Ms. Krauss spoke obtained copies of three outstanding city traffic warrants that were pending on appellant Bankston. The officers and Ms. Krauss drove to Bankston's apartment complex; the officers knocked on the door and identified themselves but received no response. They acquired a key from a securi-

ty guard, unlocked the door, and arrested appellant, who denied the commission of any offense. At that moment, two women who fit the description Ms. Krauss had given police entered Bankston's apartment and were arrested. Testimony revealed that Rachel Krauss had escaped from the two women earlier that day. Bankston's case was severed from Michael's and Rico's, and he was tried separately. He was convicted on all four counts, and this appeal followed.

Appellant challenges the sufficiency of the evidence to convict him of conspiracy to kidnap because it did not demonstrate an agreement between him and his alleged co-conspirators to kidnap Patricia Krauss prior to the alleged commission of the substantive offense of kidnapping. He also contends that the evidence was insufficient to convict him of conspiracy to transport a woman interstate for purposes of prostitution. Specifically, he asserts that there is no evidence that Michael and Rico, his alleged coconspirators, knew that he intended to transport Krauss in interstate commerce for purposes of prostitution.

▆▆▆ For an accused to be convicted of an unlawful conspiracy, there must be proof beyond a reasonable doubt that a conspiracy existed, that he had knowledge of it, and that with this knowledge he voluntarily became a part of it. *United States v. Harbin*, 601 F.2d 773, 781 (5th Cir. 1979); *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). The essential elements of such a criminal conspiracy as this are an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement. *United States v. Teal*, 582 F.2d 343 (5th Cir. 1978); *United States v. Gutierrez*, 559 F.2d 1278, 1280 (5th Cir. 1977). The agreement must have been made prior to or during the consummation of the substantive crime. *United States v. Varelli*, 407 F.2d 735, 743 (7th Cir. 1969). *See Pereira v.*

*United States*, 347 U.S. 1, 12, 74 S.Ct. 358, 98 L.Ed. 435 (1954). The agreement need not be proved by direct evidence; it can "be inferred from the facts and circumstances of the case." *Iannelli v. United States*, 420 U.S. 770, 777 n.10, 95 S.Ct. 1284, 1289–1290 n.10, 43 L.Ed.2d 616 (1975); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

▆▆▆ Viewing the evidence in the light most favorable to the government, *Glasser v. United States, supra*, and accepting all reasonable inferences that support the jury verdict, *United States v. Harbin, supra* at 781, we find substantial evidence that sustains the jury's conclusion that Bankston entered into a conspiracy with Susan Michael and Delia Rico to kidnap Patricia Krauss. Telephone records indicated that telephone calls were made from a number registered under the name of Susan R. Michael to a Houston telephone number registered under the name of Randy Bankston on the mornings of January 12 and 13, 1978. On the afternoon of January 13, 1978, after abducting Patricia and Rachel Krauss, Bankston went immediately to Michael's apartment. Patricia Krauss testified that upon entering Michael's apartment, Bankston gave Michael and Rico $500 and asked the women to "watch these two for me and don't let them out of your sight." Bankston subsequently took Patricia Krauss and left Rachel with Michael and Rico. Officer Fred Fastino of the Los Angeles Police Department testified that when he went to Ms. Michael's apartment that night she identified herself as Patricia Krauss and identified Rachel as her daughter.[1] Michael and Rico held Rachel Krauss captive until she escaped on January 16, 1978. Telephone records indicated that a call was made from Bankston's Houston telephone to Michael's Los Angeles telephone at 1:28 p. m. on January 16, 1978, shortly after Patricia Krauss had escaped from Bankston's car. That night, as Houston police

---

1. Appellant challenges the admission of this statement as hearsay. Ms. Michael's statement, however, is not hearsay because it was not "offered in evidence to prove the truth of the matter asserted," Fed.R.Evid. 801(c), but was offered as circumstantial evidence of guilty knowledge or concealment of a common plan.

arrested Bankston, Ms. Michael and Ms. Rico appeared at Bankston's apartment. Officer Johnny Freeman of the Houston Police Department testified that Ms. Rico identified herself as "Sue Black" and stated that she had just arrived from San Antonio by bus,[2] despite the fact that he observed luggage stickers reading "LA" and airline tickets showing that Ms. Rico and Ms. Michael had just arrived from Los Angeles by air.[3] On the basis of this evidence a jury could reasonably infer that Bankston had entered into an agreement with Michael and Rico.

 To sustain a conviction on a conspiracy charge, the government must prove that the conspirators had at least the knowledge required for the substantive offense itself. *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959). Appellant contends that there is no evidence to show that Michael and Rico knew that Bankston intended to transport Krauss across state lines and that he could not therefore have conspired with them to kidnap Patricia Krauss. The language of the statute, however, does not require that an offender know that he is crossing state lines.[4] So long as he "willfully transports" his victim and, in doing so, travels in interstate commerce, he need not do so knowingly. Moreover, we have previously held that

the "requirement that the offender cross state lines merely furnishes a basis for the exercise of federal jurisdiction and does not constitute an element of the offense [of kidnapping]." *United States v. Napier,* 518 F.2d 316, 319 (9th Cir. 1975). *See Feola, supra; United States v. Franklin,* 586 F.2d 560 (5th Cir. 1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1536, 59 L.Ed.2d 789 (1979); *United States v. Beil,* 577 F.2d 1313 (5th Cir. 1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979). Therefore, proof that Michael and Rico knew of the interstate nature of the plan was not required to convict Bankston of conspiracy to kidnap.

 Appellant urges upon us the notion that he cannot be convicted of conspiracy to kidnap because the agreement, if any, between him, Michael and Rico was subsequent to the consummation of the substantive crime of kidnapping. Appellant, however, mistakenly equates abduction with a violation of the kidnapping statute. Abduction is only one element of the kidnapping offense; holding the victim is another. "[I]nvoluntariness of seizure *and detention* . . . is the very essence of the crime of kidnapping." *Gawne v. United States,* 409 F.2d 1399, 1403 (9th Cir. 1969) (citing *Chatwin v. United States,* 326 U.S. 455, 464, 66 S.Ct. 233, 90 L.Ed. 198 (1946) (emphasis added)). *See Bearden v. United States,* 304 F.2d 532, 535 (5th Cir. 1962), *vacated on*

2. These statements are not hearsay as appellant contends. *See* n.1, *supra.* For a discussion of the admissibility of these statements as the product of a lawful arrest, *see* n.3, *infra.*

3. Appellant contends that these airline tickets and the statements made by Ms. Rico at the time of her arrest, which were admitted in evidence, were the product of an unlawful arrest and should have been excluded from evidence. The trial court did rule that Bankston's arrest was invalid because the police had forcibly entered his apartment solely on the basis of outstanding traffic warrants. It found no exigent circumstances to justify the failure of the police to secure a search warrant. Nevertheless, the court ruled that the airline tickets and the statements of Ms. Rico were admissible in evidence as a product of the lawful arrest of Ms. Michael and Ms. Rico, for which there was probable cause. In the trial court's view, there was "no connection between the illegal entry

into Bankston's apartment and the arrest" of the two women. We find no error in the court's ruling that the evidence was admissible incident to a legal arrest. *See United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

4. 18 U.S.C. § 1201 reads in relevant part:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

(1) the person is willfully transported in interstate or foreign commerce;

* * * * * *

shall be punished by imprisonment for any term of years or for life.

*other grounds,* 372 U.S. 252, 83 S.Ct. 875, 9 L.Ed.2d 732 (1963). Thus, the agreement among Bankston, Michael and Rico to detain Patricia Krauss for reward or otherwise existed while the "holding" element of the crime of kidnapping was continuing and could properly support Bankston's conviction for conspiracy to kidnap Patricia Krauss.

On the basis of the foregoing discussion, we therefore conclude that appellant's conviction for conspiracy to kidnap was supported by substantial evidence and must be affirmed.

▄▄▄▄▄ We reach a different result with respect to appellant's conviction for conspiring to violate the Mann Act. 18 U.S.C. § 2421 provides in relevant part:

> Whoever knowingly transports in interstate or foreign commerce, . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Thus, a violation of the statute occurs whenever an offender "knowingly" transports a woman in interstate commerce "for the purpose of prostitution" or "with the intent" that she become a prostitute. Because conviction of conspiracy to violate a federal law requires proof of "at least the degree of criminal intent necessary for the substantive offense itself," *Feola, supra,* 420 U.S. at 686, 95 S.Ct. at 1265, the government had the burden of proving that Michael and Rico *knew* that Bankston intended to transport Patricia Krauss in interstate commerce *for the purpose of prostitution.* The government failed to satisfy this burden. A close examination of the

record reveals no evidence that Bankston, in the presence of Michael or Rico, referred to his intention to return to Texas with Krauss and use her as a prostitute. Nor is there other evidence from which a jury could reasonably infer that Michael and Rico knowingly joined a plan to use Krauss as a prostitute. Since neither Michael nor Rico was shown to have the degree of criminal intent required by the Mann Act, Bankston could not have conspired with them to violate that Act. Accordingly, we reverse and vacate the five-year sentence for the Mann Act conspiracy.

▄▄▄▄▄ Appellant Bankston also submits that his conviction for conspiracy to kidnap and for the substantive crime of kidnapping violated his fifth amendment right not to be placed in jeopardy twice for the same offense.[5] He acknowledges the general rule that separate sentences can be imposed for a conspiracy to do an act and for the subsequent accomplishment of that end without violating the double jeopardy clause. *Pereira, supra,* 347 U.S. at 11, 74 S.Ct. 358; *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). So long as conviction of one offense requires proof of a fact not required for conviction of the other, there is no fifth amendment violation. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Appellant contends, however, that because both the conspiracy count and the substantive count contain identical elements and are proved by the same evidence, a conviction on both counts violates the double jeopardy clause, citing *United States v. Austin,* 529 F.2d 559 (6th Cir. 1976).

Appellant's reliance on *Austin* is misplaced. In *Austin* the Sixth Circuit found that the substantive and conspiracy counts of the indictment charged essentially the same offense,[6] and alleged in effect the

---

**5.** Bankston makes a similar claim with respect to his conviction for conspiracy to violate the Mann Act and the substantive violation of the Mann Act. He also challenges his two conspiracy convictions on double jeopardy grounds. Because we reverse the Mann Act conspiracy conviction, we do not address these claims.

**6.** Austin was convicted for aiding and abetting in offering a bribe in violation of 18 U.S.C. §§ 201(f) and 2, for accepting a bribe in violation of 18 U.S.C. § 201(g), and for conspiracy to violate 18 U.S.C. §§ 201(f) and 201(g).

same concert of action or agreement. Additionally, the court found that essentially the same evidence was relied upon to prove both the conspiracy count and the substantive offenses. In light of these facts, the court held that Austin's convictions on both the substantive counts violated his fifth amendment right against double jeopardy.

This court has recently rejected the "same evidence" test adopted in *Austin* and adhered to the *Blockburger* "separate offense" test. *United States v. Cowart*, 595 F.2d 1023 (5th Cir. 1979). Cowart had been convicted of aiding and abetting the commission of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343, and conspiring to commit wire fraud in violation of 18 U.S.C. §§ 371 and 1343. Most of the evidence was used to prove the elements of both the substantive and the conspiracy offenses. We found this to be "of no consequence." *Id.* at 1034. In our view, the *Blockburger* test looked not to the evidence adduced at trial but focused on the elements of the offense charged. *Id.* at 1029 (citing *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Iannelli, supra*, 420 U.S. at 785 n.17, 95 S.Ct. 1284; *United States v. Dunbar*, 591 F.2d 1190, 1193 (5th Cir. 1979)). We concluded that "for the purpose of double jeopardy analysis, the dispositive fact is that the offense of conspiracy requires proof of an element—conspiratorial agreement—which the crime of aiding and abetting does not." [7] *Cowart, supra* at 1034.

■ It is clear that kidnapping and conspiracy to kidnap are separate offenses that satisfy the *Blockburger* test. Conspiracy to kidnap requires proof of an agreement, which the crime of kidnapping does not. Consequently, Bankston's conviction for kidnapping and conspiracy to kidnap do not impose upon him a double punishment in violation of the double jeopardy clause.

■ Appellant contends that his conviction for transporting a woman in interstate commerce for the purpose of prostitution must be reversed because the statute on which it is based, 18 U.S.C. § 2421, deprives him of equal protection of the law. He argues that the statute is unconstitutional on its face because it applies only to the transportation of females for immoral purposes and not to the transportation of males.

Appellant has no standing to challenge the constitutionality of this section on the ground of equal protection, as he is not an unprotected male victim of an interstate transportation for immoral purposes. *United States v. Green*, 554 F.2d 372, 375 (9th Cir. 1977); *United States v. Garrett*, 521 F.2d 444, 446 (8th Cir. 1975). We note in passing, however, that both the Eighth and Ninth Circuits have upheld the constitutionality of 18 U.S.C. § 2421 against identical equal protection attacks. *Green, supra; Garrett, supra.*

■ Finally, appellant claims that the failure of the court reporter to include in the record on appeal all of the defense counsel's objections to the court's charge and the court's rulings on those objections prejudiced him. Because Bankston was represented at trial by the same attorneys that represent him on appeal, he must make a "*specific* showing of prejudice," *United States v. Selva*, 559 F.2d 1303, 1305 (5th Cir. 1977) (emphasis added), in order to secure a reversal of his convictions. Appellant has failed to make such a showing. In his brief, appellant alleges that he suffered prejudice and "intense hardship" because the missing portions of the record would have supported the points of error alleged in his brief and would have revealed "certain other potential points of error" that his counsel could not consider without the record. We find these allegations insufficient to satisfy the *Selva* standard. As we stated in *Selva* :

---

7. We noted in *Cowart, supra* at 1033 n.14, that the Sixth Circuit has limited the application of *Austin* to those instances where an indictment is drawn in such a way that the substantive offenses charge the same agreement or concert of action as the conspiracy count. *See United States v. Fife*, 573 F.2d 369, 373 (6th Cir. 1976) (reaffirming the "separate offense" test of *Blockburger* with a limited *Austin* exception).

When a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from the failure to record a portion of the proceedings. . . . The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded.

*Id.* at 1306. In the instant case, the entire charge was included in the record on appeal, and appellant does not raise any objections to it. Accordingly, given appellant's vague allegations of prejudice, we decline to reverse his convictions on this ground.

AFFIRMED in part and REVERSED in part.