Daniel Ross UMPHLET, et al.,
Plaintiffs-Appellants,

v.

Harry CONNICK, District Attorney, et
al., Defendants-Appellees.

No. 86–3089.

United States Court of Appeals,
Fifth Circuit.

May 6, 1987.

Robert H. Belknap, New Orleans, La.,
for plaintiffs-appellants.

Thomas W. Milliner, Dept. City Atty.,
Okla Jones, City Atty., New Orleans, La.,
for City of New Orleans, and Morial, Jusse-
lin & Morris.

Thomas P. Anzelmo, New Orleans, La.,
for defendants-appellees.

Jack Peebles, Michael E. McMahon, Asst.
Dist. Attys., New Orleans, La., for Harry
Connick.

Before WISDOM, JOHNSON, and
GARWOOD, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents a challenge to the
constitutionality of Louisiana's "B–girl"
statute. This statute provides that:

No person holding a retail [alcohol]
dealer's permit and no agent, associate,
employee, representative, or servant of
any such person shall do or permit any of
the following acts to be done on or about
the licensed premises:

(8) Employ or permit females, commonly known as B girls, to solicit patrons for drinks and to accept drinks from patrons and receive therefor any commission or remuneration in any other way.[1]

The plaintiffs are Daniel Umphlet, owner of Dirty Dan's Lounge in the French Quarter of New Orleans, and four of his employees. On February 8, 1983, and on May 14, 1984, New Orleans police officers had arrested the plaintiffs and charged them with violating the Louisiana B–girl statute.

The plaintiffs filed this § 1983 action alleging that the statute violates their equal protection, due process, and first amendment rights because the statute is discriminatory on the basis of gender, is vague, and is overbroad. The district court dismissed their complaint on summary judgment. We affirm.

### I.

On two occasions in early 1983, plain-clothes detectives of the New Orleans Police investigated Dirty Dan's Lounge for B–drinking. An officer entered the lounge and sat at the bar. The lounge employed several women who took turns dancing and waiting on the patrons. One employee approached the officer, then asked him to buy her a drink. The officer obliged; the barmaid brought the employee a six-dollar champagne cocktail and, when ringing up the sale, placed a quarter in a certain compartment in the drawer of the cash register. Later, another employee approached the officer and asked him to buy her a drink. The officer again obliged; the barmaid brought the employee another six-dollar cocktail, poured from the same bottle as before. This time, however, the barmaid placed the coin in a different compartment in the cash register drawer. The employees repeated this practice several times,

with at least two officers and other patrons. It became apparent to the officers that each employee had her own compartment in the drawer of the cash register, enabling her and the manager to determine the number and value of the drinks she sold. The officers recognized a typical B–drinking operation. Based on these observations, the officers arrested Daniel Umphlet, the barmaid, and the B–girls.

The New Orleans district attorney's officer prosecuted only Umphlet for violating the B–drinking statute. The state district court quashed the indictment, ruling that Louisiana's B–drinking statute was unconstitutional. Umphlet and his four employees then filed this action in federal district court, naming as defendants the State of Louisiana, the City of New Orleans, the Attorney General of the State, District Attorney Harry Connick, the Mayor and the Chief of Police of the City, and the arresting officer. The district judge stayed the action while the State appealed the ruling of the state court. On appeal, The Louisiana Supreme Court reversed the trial court and upheld the constitutionality of the statute.[2] The federal district court then revived the § 1983 action and dismissed it on the defendants' motion for summary judgment.

### II.

A threshold consideration is whether the district court should have reached the merits of the plaintiffs' complaint in the face of the concurrent state proceedings against Umphlet. Under the doctrine of *Younger v. Harris*,[3] except in rare situations, federal courts should not interfere with ongoing criminal prosecutions in state courts. The state defendants did not object, however, to a federal adjudication in this case. On appeal, they did not

---

1. La.Rev.Stat.Ann. § 26:88(8) (1975). The same prohibition is repeated in Chapter 2 of Title 26, which governs the sale of low alcohol beverages. La.Rev.Stat.Ann. § 26:285(8) (1975). Plaintiffs challenge both statutes and our holding shall apply to both, although we will refer to them collectively as the B–drinking statute.

   The terms "B–girl" and "B–drinking" are in common usage. Webster's New World Dictionary defines "B–girl" as "a woman employed by a bar to entice men into buying drinks freely". The dictionaries carry no definition of "B–boy".

2. *State v. Corky,* 458 So.2d 904 (La.1984) (consolidated with *State v. Umphlet* ).

3. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

raise the issue. Indeed, during oral argument, they urged this Court *not* to abstain. Federal courts are not compelled to abstain on *Younger* grounds when the state voluntarily submits to adjudication in a federal forum.[4] We decline to abstain.[5]

## III.

A. The plaintiffs allege that Louisiana's B–girl statute violates the constitutional guarantee of equal protection because it discriminates on the basis of gender. In *DeFrances v. Edwards,*[6] a panel of this Court rejected an identical challenge to the same statute. The policy of this and other circuits is not to overrule a prior panel's decision, absent an intervening and contrary decision by the Court en banc or the Supreme Court.[7]

In *DeFrances* this court affirmed the decision of the district court for the reasons given in the district court opinion.[8] In that opinion Judge Stagg cited the controlling Supreme Court precedent, *Craig v. Boren.*[9] There is a question whether the plurality in *Craig* articulated a standard of scrutiny more strict than that of the rational basis test: "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."[10] The

court quoted that language by Justice Brennan, but held:

No other Justice joined him or disagreed with him in that specific assessment. Justice Brennan was relying on *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), as authority for his proposition. But *Reed* does not go nearly so far as *Craig.* Rather, *Reed* states the familiar rational relationship test.... The test for justification, then, must be considered to be *Reed*'s test, as *Craig* relies on *Reed.* The state must show that the classification because of sex bears a rational relationship to a valid state objective.[11]

In *DeFrances* the court held that the state has a valid objective in prohibiting the employment of B–girls because of the numerous evils associated with it: the eruption of violence when inebriated patrons are overcharged for the B–girls' drinks, the commercial exploitation of B–drinking through sexual inducements by the B–girls, and the plight of the B–girls themselves, many of whom are treated as "white slaves". Accordingly, the court held that the statute did not violate the equal protection clause. Because our Court has considered the *Craig* standard, in a similar context, we conclude that we are bound by the *DeFrances* decision—even though

4. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 481, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977); *Universal Amusement Co. v. Vance,* 587 F.2d 159, 163 n. 6 (5th Cir.1978), *aff'd,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Sequoia Books, Inc. v. McDonald,* 725 F.2d 1091, 1095 (7th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984).

5. The State's willingness to have a ruling on the merits in this Court answers any concern we may have about undue interference in the State's affairs. Moreover, abstention would not serve any federal interest in judicial economy because we would still have to reach the merits on the complaints of the plaintiffs other than Umphlet.

   Similarly, the question of the preclusive effects, if any, of the judgment of the Louisiana Supreme Court on Umphlet's complaint has not been raised by the defendants and, therefore, is not before this Court. *See Home Depot, Inc. v. Guste,* 773 F.2d 616, 620–21 n. 4 (5th Cir.1985).

   The only affirmative defense raised by any of the defendants is District Attorney Harry Con-

nick's claim of prosecutorial immunity. We hold, of course, that he is entitled to immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

6. 609 F.2d 239 (5th Cir.1980), *aff'g, per curiam,* 480 F.Supp. 1 (W.D.La.1977).

7. *Victorian v. Miller,* 796 F.2d 94, 95–96 (5th Cir.1986); *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

8. "Having reviewed the record, briefs and oral arguments, we are in agreement with the judgment and reasoning of the district court and accordingly affirm on the basis of its opinion". 609 F.2d 239.

9. 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

10. 429 U.S. at 197, 97 S.Ct. at 457.

11. 480 F.Supp. at 2–3 (quotation omitted).

there might be some question whether *Craig* has imposed a more stringent test than that used in *DeFrances.*

At this point, we could end this opinion. To resolve any gnawing doubt, however, we add the following considerations.

B. We are satisfied that the Louisiana legislature sought to achieve an important governmental interest in enacting the B-girl statute. The *DeFrances* court identified the most serious societal harm associated with B-drinking; at least in 1975, when the statute was enacted. This was the employment of B-girls. Indeed, the district court in *DeFrances* noted, in 1980, that the "state has found no establishment that employs B-boys".[12] Here, the only evidence in the record of the employment of B-boys are a few brief remarks by a New Orleans police officer in a deposition. He testified that a few establishments in the French quarter employ male transvestites or transsexuals to solicit drinks. He did not refer to the use of male prostitutes as B-boys, nor did he cast any light on the seriousness of the problem. The Louisiana Supreme Court considered the question and rejected the contention that the statute was gender-discriminatory:

> The legislative history of the B-drinking statute indicates that the practice of B-drinking by women in retail alcohol outlets was a serious problem, and the evidence in *DeFrances* and other cases established that fact. The statute under consideration was an appropriate legislative response to that problem.

. . . . .

12. 480 F.Supp. at 2.

13. *State v. Corky,* 458 So.2d 904, 906–07 (La. 1984).

14. The statute reads: "No *person* ... shall ... employ or permit females ..." (emphasis added).

15. *See, e.g., DeFrances,* 480 F.Supp. at 2. In this case, both men and women were arrested. Mr. Umphlet was arrested in his capacity as owner of Dirty Dan's. Ms. Vickers and Ms. Lytras were arrested as managers. Ms. Kerins and Ms. Green were arrested for B-drinking.

16. *Michael M. v. Superior Ct. of Sonoma County,* 450 U.S. 464, 477, 101 S.Ct. 1200, 1208, 67

[There was] no showing that such similar conduct by males created a social problem of any importance and therefore did not establish a basis for concluding that the Legislature acted unreasonably in focusing solely on the conduct of women. As the Court stated in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970):

> "The Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all." [13]

Apparently the problems associated with the employment of B-boys grew in seriousness, for in 1985 the state legislature amended the statute to read: "Employ of persons, commonly known B-drinkers ..." 1985 La. Acts No. 412, § 1. The new gender-neutral statute did not become effective, however, until after the plaintiffs filed this action.

C. Significantly, the Louisiana statute does treat men and women identically in the one aspect in which both men and women contribute to the problems of B-drinking. Both men and women own, operate, manage, and work in drinking establishments. Both men and women can be punished for employing or permitting B-girls to solicit drinks in their establishments.[14] Both men and women are, in fact, arrested for B-drinking.[15] In the incident that gave rise to this case, two of the women were arrested as managers. When a statutory prohibition burdens both men and women, we must focus our inquiry on the *difference* in these burdens.[16] For

L.Ed.2d 437 (1981) (Stewart, J., concurring). An analogy can be drawn from those cases involving the Mann Act, 18 U.S.C. § 2421, which prohibits any person from transporting females in interstate commerce for immoral purposes. Although the Mann Act makes a gender distinction, because both males and females are prohibited from engaging in the proscribed conduct, courts have found the Act to be gender-neutral in its effects and not violative of equal protection. *United States v. Bankston,* 603 F.2d 528, 434 (5th Cir.1979); *United States v. Garrett,* 521 F.2d 444, 446 (8th Cir.1975); *United States v. Green,* 554 F.2d 372, 375 (9th Cir.1977).

years, no one escaped the prohibition of the B–drinking statute. All employers and managers, whether male or female, were prohibited from employing or permitting B–girls to solicit drinks. When the State had its attention drawn to the existence of problems relating to B–boys, it expanded the reach of the statute to include all B–drinkers. The momentary disparity in the State's treatment of its citizens does not rise to the level of a constitutional violation in a case where the legislature provided an appropriate solution to the main problem under consideration. As District Judge Stagg, citing *Craig*, pointed out in his opinion in *DeFrances v. Edwards:*

> The state has a valid objective in preventing commercial exploitation through sexual inducements. In addition, the state may legitimately seek to prevent violence and extortion. All of these activities, whether caused by B–drinking by females or not, are associated with B–drinking by females. In the state's experience, the same activities have not been associated with the solicitation of drinks for themselves for compensation by men. Thus, the distinction does bear a rational relationship to a valid state objective. The statute passes muster under the Equal Protection Clause.[17]

### IV.

The plaintiffs also challenge the B–drinking statute on grounds of vagueness and overbreadth. We find no merit in their arguments. The due process clause requires that every criminal statute define its prohibitions "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[18] The parties make the same arguments relating to overbreadth as they make relating to vagueness.

The B–drinking statute · clearly defines the conduct that is prohibited: No person shall "employ or permit females, commonly known as B–girls, to solicit patrons for drinks and to accept drinks from patrons and receive therefor any commission or remuneration in any other way." The statutory language unambiguously sets forth each element of the offense. The phrase "commonly known as B–girls" does not add an ambiguous element; it is a descriptive term that does not purport to expand or restrict the clear statutory definition of the prohibited conduct.[19]

Plaintiffs contend, nevertheless, that the language of the statute can be construed to prohibit a wide range of innocent conduct. For example, they argue that the statute literally prohibits a female patron from asking her date for a drink, because she will have solicited a drink and received therefor remuneration in the form of the drink itself. They also give the example of a woman owning stock in a corporation which operates a bar; if she should ask her escort for a drink and later receive remuneration when she later shares in the bar's profits, she would come within the scope of the statute. The plaintiffs argue that because the statute is susceptible to these and other interpretations, the statute is vague and overbroad.

We do not agree. First, only the most indiscriminate reading of the statute would suggest that it reaches the wide

17. 480 F.Supp. at 3.

18. *Home Depot, Inc. v. Guste,* 773 F.2d 616, 627 (5th Cir.1985) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)).

19. *State v. Corky,* 458 So.2d 904, 905–06 (La. 1984); *State v. Cox,* 352 So.2d 638, 641 (La. 1977); *Burnette v. Louisiana Bd. of Alcoholic Beverage Control,* 252 So.2d 346, 348–49 (La. App. 4th Cir.1971). Moreover, to the extent that the doctrine of vagueness is premised on the requirement of fair notice, the use of the colloquialism "B girl" appears likely to alert the layperson to the prohibition of the statute. See dictionary definitions, note 1. In any case, whether the term "B girl" is vague is not the controlling question. Because the phrase "commonly known as B–girls" is not part of the statutory definition of B drinking, we cannot find that its inclusion in the statute renders the statute vague. *See Ferguson v. Estelle,* 718 F.2d 730, 732–33 & n. 5 (5th Cir.1983), holding that the vagueness of a state statute depends on how that statute is interpreted and applied by authoritative state courts.

range of hypothetical conduct submitted by the plaintiffs. The statute expressly requires that the B drinker "solict patrons for drinks ... and receive *therefor* any commission or remuneration." The benefit received must be attributable to the act of soliciting drinks. The shareholder in the example does not receive compensation for the act of soliciting drinks; rather, she receives compensation for being a shareholder in the corporation owning the bar. Moreover, the statute requires that the B-drinker "accept drinks ... and receive therefor any commission or remuneration *in any other way.*" The benefit must be something in addition to the drink itself. Second, the plaintiffs have failed to show that it is vague or overbroad as applied to them. The plaintiffs have no standing to complain about the law as applied to others when their own conduct is "clearly within the core of proscribed conduct." [20]

The decision of the district court is AFFIRMED.

---

**20.** *Ferguson v. Estelle,* 718 F.2d 730, 735 (5th Cir.1983); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Because the plaintiffs do not seriously claim that the first amendment rights of themselves or others are infringed by the statute, they cannot challenge the statute for overbreadth. *Stites v.* *I.R.S.,* 793 F.2d 618, 620 (5th Cir.1986); *Hill v. City of Houston,* 789 F.2d 1103, 1106 (5th Cir. 1986). Moreover, the only type of speech arguably infringed by the statute is commercial speech, to which the doctrine of overbreadth does not apply. *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 496–97, 102 S.Ct. 1186, 1192–93, 71 L.Ed.2d 362 (1982).