UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Jefferson McCALLIE,
Defendant-Appellant.

No. 76–1965.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 3, 1977.

Decided April 22, 1977.

Harold E. Brown, Brown & Brown, Chattanooga, Tenn., for defendant-appellant.

John L. Bowers, Jr., U. S. Atty., Ray H. Ledford, Chattanooga, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, EDWARDS and ENGEL, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant McCallie has perfected a direct appeal to this court from his conviction and eight-year sentence after jury trial in the United States District Court for the Eastern District of Tennessee, Southern Division. Appellant and four other men had been indicted on a charge of bank larceny, in violation of 18 U.S.C. §§ 2113(b) and 2 (1970). Two of McCallie's codefendants, Carter and Parker, who had been charged as principals, pled guilty and were sentenced to 10 years. McCallie, Shropshire and Holland, each of whom had been charged as aiders and abettors, went to trial and were found guilty by the jury. The sentencing judge gave Shropshire a six-year sentence, gave Holland a seven-year sentence, and gave McCallie an eight-year sentence—all three of these sentences being under 18 U.S.C. § 4208(a)(2) (1970).

Only McCallie has appealed. He claims 1) abuse of his due process rights in that government "deals" with codefendants Carter and Parker prevented his effective cross-examination of them, and deprived him of exculpatory evidence; 2) government agents who destroyed their interview notes thereby prevented appellant's use of said notes for exculpation, and 3) the judge who tried the case by assignment erred in denying appellant's motion for him to pronounce sentence rather than have sentence pronounced by the regularly designated judge for the District concerned.

### FACTS

The facts in this case are unusual. The Soddy-Daisy Branch of the Hamilton National Bank at Soddy-Daisy, Tennessee, was robbed of approximately $100,000 on June 27, 1973. At trial original codefendants Carter and Parker testified (after pleas of guilty) that they were the men who robbed the bank. Their testimony also implicated the other three defendants. They testified that the robbery was an inside job planned originally by the bank manager Holland and by appellant.

Carter testified that he had been approached by Shropshire, whom he had known, and told about the arrangement to rob a bank, the amount of money that could be had on a particular morning, and that the bank manager would set up the robbery. He also testified that 1) Shropshire arranged a meeting with Carter and appellant McCallie in the parking lot of a restaurant called the Fireplace Lounge, owned jointly by appellant and codefendant Holland, who was branch manager of the Soddy-Daisy Branch Bank; 2) three other meetings, two of which Holland attended, were subsequently arranged with McCallie; 3) at one of these meetings McCallie gave Carter a master key to all the doors of the bank and told him that he could use Holland's car for an escape vehicle; 4) during the robbery Holland separated out the "bait" money; and 5) after the robbery he (Carter) met McCallie and gave him the agreed on share of the loot.

Parker's testimony confirmed Carter's version of the one meeting Parker attended. He also confirmed their trip to Atlanta to get the master key duplicated.

### ACCOMPLICE TESTIMONY

Accomplice testimony, of course, is not barred in criminal prosecutions, al-

though the courts recognize the danger that it may be self-serving and unreliable. This Circuit has adhered to the general rule that a conviction may be valid if supported only by accomplice testimony which a properly cautioned jury accepted as proof beyond reasonable doubt. *See Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *United States v. Ailstock*, 546 F.2d 1285, 1287–88 (6th Cir. 1976); *United States v. Ross*, 477 F.2d 551, 552 (6th Cir.), *cert. denied*, 414 U.S. 912, 94 S.Ct. 252, 38 L.Ed.2d 150 (1973); *United States v. Willis*, 473 F.2d 450, 454 (6th Cir.), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973).

McCallie testified at the trial. His testimony at trial was not shaken on cross-examination. His defense was and is that he is being victimized by lying testimony from the bandits Carter and Parker, both of whom got favorable treatment from the government as the result of inculpating three other people. He points out that Carter and Parker robbed the bank with weapons (and admitted to this fact), but that they were allowed to plead guilty to bank larceny and take a maximum sentence of ten years, in place of the bank robbery maximum of 25 years. *See* 18 U.S.C. § 2113(d) (1970).

■ The protections against unreliable accomplice testimony are to be found in cross-examination and in a jury trial with proper cautionary instructions. This record discloses that defense counsel had (and used) ample leeway to cross-examine Carter and Parker concerning the possibility that their testimony was shaped to fit government wishes because of actual or hoped for benefits. Defense counsel also cross-examined them extensively concerning their lengthy criminal records.

In addition, the trial judge instructed the jury as follows:

The testimony of an accomplice if believed by a jury may be of such weight to sustain a verdict of guilty even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is also to be received with caution and with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that unsupported testimony beyond a reasonable doubt.

The District Judge also instructed the jury:

[I]n judging the credibility of an accomplice, you should carefully consider the fact that the accomplice has been made certain promises by the government, that is to say, the testimony of a person who provides evidence against a defendant for impunity [sic] to punishment or for some other personal advantage or vindication must be examined and weighed by the jury with greater care than the testimony of an ordinary witness.

■ As to the accomplice testimony issue, we find neither due process violation nor reversible error.

Actually in this case there was significant corroboration of Carter's and Parker's testimony as to the "inside job" nature of this bank larceny.

Carter's testimony about Shropshire's role was supported indirectly but significantly by testimony of the FBI Agent who arrested Shropshire. He stated that on telling Shropshire that he was under arrest for the Soddy-Daisy Bank robbery and that he (Shropshire) got $10,000 of the loot, Shropshire replied, "I did not count the money."

There is a good deal of evidence also to tie Holland into the bank robbery. The two bandits who appeared at the bank, Carter and Parker, entered the bank itself without breaking any doors, and there was testimony that only Holland and his assistant manager had access to the master keys to the bank. Further, Holland made a call to the police before entering the vault and triggering the silent alarm, telling them that the system was not operating properly and that it would be a false alarm. Questioned about this at trial, Holland's explanation was that Carter and Parker had told him they had his wife and children and that he admitted them to the bank and made the call to the police for that reason.

The two bandits made their escape in Holland's car. Holland testified that they had taken the key to the car from him after they had tied him up. The jury, in weighing Carter's and Holland's stories, could consider the likelihood of two bank bandits depending upon finding a convenient key on the person of the bank manager and having the car to which it belonged properly identified to them. It is undisputed that they did, indeed, escape in the automobile which Holland drove to the bank on that day.

While none of the above serves to link appellant McCallie directly to the bank robbery, it does lend some support to the inside job theory.

This, then, brings us to McCallie's relationship to Holland and possible motivation for McCallie's participation. McCallie was the manager and co-owner of the Fireplace Lounge. Holland was the co-owner of the Lounge and McCallie had other business dealings with him. The Fireplace Lounge was in financial difficulty at the time of the bank robbery. Within a month or two after the bank robbery, the Lounge went into bankruptcy.

Although no issue of sufficiency of evidence is directly presented, we note that appellant's guilt was clearly a proper issue for the jury.

We turn now to the purely legal issues.

## INTERVIEW NOTES

During the trial, counsel for Shropshire [1] asked for production of the interview notes of an FBI Agent. He was told by the Agent that the notes "have been destroyed. . . . Oh, it's been the Justice Department's policy for 15 years or so to handle our work in that manner." The 302 Report on that Agent's interview with Shropshire was, of course, furnished after the Agent testified. Appellant's counsel claims that the original field notes should have been preserved and that they might have con-

tained exculpatory evidence. This record shows no basis for the request other than speculation.

■ This Circuit has held that routine destruction of interview notes after preparation of a full 302 Report did not violate either the Jencks Act, 18 U.S.C. § 3500 (1970), or case law such as *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *United States v. Hurst*, 510 F.2d 1035, 1036 (6th Cir. 1975); *United States v. Lane*, 479 F.2d 1134, 1135–36 (6th Cir.) *cert. denied*, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); *United States v. Fruchtman*, 421 F.2d 1019, 1021–22 (6th Cir.), *cert. denied*, 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970). *Cf. United States v. Lonardo*, 350 F.2d 523 (6th Cir. 1965).

■ We, of course, note that two Circuits have now held that destruction of FBI interview notes *is* a violation of the Jencks Act or the *Brady, supra*, doctrine.[2] We do not, however, feel that this case is a suitable vehicle to review this Circuit's settled case law on this subject. This record shows neither arguable prejudice nor any demand for the notes by appellant's trial counsel.

## SENTENCING PROCEDURE

After completion of this trial, Judge Duncan, who had tried the case on assignment to Chattanooga in Judge Wilson's illness, returned to his regular duty station several hundred miles away in Columbus, Ohio. Judge Wilson, on his return to the bench, proceeded to sentence the defendants in this case, including appellant. Appellant contends that this procedure somehow prejudiced his interests.

Rule 25 of the Federal Rules of Criminal Procedure speaks specifically to this issue:

**Rule 25. Judge; Disability**

(a) **During Trial.** If by reason of death, sickness or other disability the

---

1. McCallie's attorney did not join in this request, but does press the issue on McCallie's appeal.

2. *See United States v. Harrison*, 173 U.S. App. D.C. 260, 524 F.2d 421 (1975); *United States v. Bundy*, 153 U.S.App.D.C. 191, 472 F.2d 1266 (1972); *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976).

judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

**(b) After Verdict or Finding of Guilt.** If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

Fed.R.Crim.P. 25.

The Advisory Committee notes to Rule 25(b) are even more definitely in point:

**Subdivision (b).**—The words "from the district" are deleted to permit the local judge to act in those situations where a judge who has been assigned from within the district to try the case is, at the time for sentence, etc., back at his regular place of holding court which may be several hundred miles from the place of trial. It is not intended, of course, that substitutions shall be made where the judge who tried the case is available within a reasonable distance from the place of trial.

While this court has thus far never had occasion to rule on this matter, other Courts of Appeals have done so in effect upholding the rule just quoted. *Fields ex rel. United States v. Fitzpatrick*, 548 F.2d 105 (3rd Cir. 1977); *United States v. Lewis*, 460 F.2d 257 (9th Cir. 1972); *United States v. Bakewell*, 430 F.2d 721 (5th Cir.), *cert. denied*, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970); *Rogers v. United States*, 350 F.2d 297 (10th Cir. 1965); *United States v. Bowser*, 497 F.2d 1017, 1019 n. 2a (4th Cir.), *cert. denied*, 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974). *See also United States v. Taylor*, 469 F.2d 284 (3d Cir. 1972).

In this case the sentencing judge administered an eight-year sentence under 18 U.S.C. § 4208(a)(2) (1970), where he had discretion under the statute to sentence to a maximum term of ten years without § 4208(a)(2) benefit.

 We view Rule 25(b) as a valid and reasonable statement of applicable law which is binding upon this court unless it transgresses some constitutional standard. We find no such violation in the facts of this case and, for that matter, no prejudice to appellant.

The judgment of the District Court is affirmed.