**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Juanita KENDRICKS,**
**Defendant-Appellant.**

No. 79–5174.

United States Court of Appeals,
Sixth Circuit.

Argued April 15, 1980.

Decided July 2, 1980.

Rehearing and Rehearing En Banc
Denied Sept. 17, 1980.

Wilfred C. Rice, Detroit, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Victoria Toensing, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before LIVELY, MARTIN and JONES, Circuit Judges.

PER CURIAM.

Juanita Kendricks appeals from her criminal conviction in a jury trial before the Eastern District of Michigan.[1] The primary issue is whether defendant's right to cross-examine adverse witnesses, guaranteed by the Sixth Amendment, is violated by the admission of evidence of extrajudicial statements uttered by a non-testifying co-defendant during the commission of an unlawful act. The statements incriminated the defendant. We find this and the other allegations of error to be without merit. Thus, the conviction is affirmed.

I.

Cynthia Wiley, a government informant since October 1976, had known co-defendant Beth Bracy since 1973. They had attended high school together. On June 2, 1977, at approximately 12:45 p. m., Wiley twice telephoned Bracy on the request of DEA Agent Louis Antonucci, to arrange the purchase of two ounces of heroin. During these tape-recorded conversations, Wiley agreed to telephone Bracy at 2:30 p. m. from the corner of "Fenkell and Greenfield." When Wiley called from there, Bracy told them to wait for her "mother," who was on her way. Wiley and Antonucci instead went to Bracy's residence, where they were told to return to the corner of "Fenkell and Greenfield." As they left Bracy's residence, Wiley and Antonucci observed the defendant driving a gold-colored automobile.

After waiting at the specified corner for several more minutes, Antonucci and Wiley returned to the Federal Building where they had several more telephone conversations with Bracy, which were tape-recorded. During the first of these conversations, Bracy again implicated her mother in the drug transaction. In subsequent conversations, Bracy discussed the drug transaction with Antonucci and established a meeting place and time. During the final telephone conversation, Bracy stated that her mother had approved the plan to consummate the drug transaction.

At approximately 7:30 p. m., Antonucci and Wiley met Bracy at her residence and together they drove to Immaculata High School. At Immaculata, Antonucci gave Wiley $2,500 and she and Bracy went inside the school building. Bracy went upstairs to the school gymnasium. Meanwhile DEA Agent Christine Higgins entered the building, and she proceeded to the school gymna-

---

1. The jury convicted defendant on one count relating to her of aiding and abetting the distribution of a controlled substance, 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1). The controlled substance was 26.53 grams of heroin. She was acquitted on one count relating to her of aiding and abetting the possession with intent to distribute a controlled substance, 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1). Co-defendant Beth Bracy, daughter of the defendant, entered guilty pleas on similar counts during the trial and one count of assault against a federal officer, 18 U.S.C. § 111, was dismissed as part of the plea bargain.

sium to observe Bracy. Higgins observed Bracy pass the defendant a red clutch purse. Higgins stated the defendant removed an object from her purse and placed it into the red clutch purse, which the defendant passed back to Bracy. Bracy left the gymnasium and met Wiley in a downstairs restroom to exchange the money and the heroin. Bracy returned to her seat beside the defendant in the gymnasium and again handed the defendant the red clutch purse. The defendant removed something from the red clutch purse and placed it into her purse.

## II.

During the government's case-in-chief the district court admitted into evidence testimony describing extrajudicial statements by Bracy, the co-defendant, and the tape recordings of Bracy's telephone conversations with Wiley and Antonucci. This evidence implicated the defendant in the unlawful drug transaction. Bracy did not testify at trial. The district judge denied defense counsel's motion that the jury be instructed to disregard all incriminating references to the defendant in co-defendant Bracy's statements. It is the admission into evidence of these conversations and descriptive statements which appellant asserts as error.

We reject defendant's argument that the decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), prohibits the admission of such evidence. The Supreme Court in *Bruton* reversed the conviction of a defendant who had been implicated in a crime by his co-defendant's extrajudicial *confession*.

Because the co-defendant had not testified during the joint trial and thus could not be cross-examined, the court held that the admission of the co-defendant's confession had deprived the defendant of his right of cross-examination guaranteed under the confrontation clause of the Sixth Amendment. It is readily apparent that *Bruton* is inapposite to this case.[2]

First, *Bruton* was specifically limited to hearsay "clearly inadmissible against [the defendant] under traditional rules of evidence." 391 U.S. at 128 n.3, 88 S.Ct. at 1623 (emphasis added). In this case the testimony and tape recordings were *admissible* as evidence under the co-conspirator exception to the hearsay rule.[3] Fed.R.Evid. 801(d)(2)(E) allows the admissibility of extrajudicial statements prejudicial to a defendant as long as four prerequisites are met: the statements must have been made by a co-conspirator of the defendant; they must have been made during the pendency of the conspiracy; they must have been made in furtherance of the conspiracy; and the existence of the conspiracy and the defendant's participation in it must be established at trial.[4]

Second, the decision in *Bruton* was motivated, in part, by a concern that the credibility of confessors who inculpate alleged co-conspirators is "inevitably suspect . . . given the recognized motivation to shift blame onto others." 391 U.S. at 136, 88 S.Ct. at 1628. Once the prosecution meets the above-stated prerequisites, statements made by one co-conspirator are treated as *vicarious admissions* by the other co-

---

2. *See Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), wherein the Court stated: "[t]he Confrontation Clause has never been held to bar the admission into evidence of every relevant extrajudicial statement made by a nontestifying declarant simply because it in some way incriminates the defendant."

3. For discussions of the co-conspirator exception, see Levie, *Hearsay and Conspiracy a Reexamination of the Co-conspirator's Exception to the Hearsay Rule*, 52 Mich.L.Rev. 1159 (1954); Comment, *The Hearsay Exception for Co-conspirators' Declarations*, 25 U.Chi.L.Rev.

530 (1958); Davenport, *The Confrontation Clause and the Co-conspirator Exception in Criminal Prosecutions: A Functional Analysis*, 85 Harv.L.Rev. 1378 (1972).

4. Fed.R.Evid. 801(d)(2)(E) provides:
    (d) A statement is not hearsay . . .
    (2) The statement is offered against a party and is . . .
    (E) A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

conspirators.[5] Statements made by a co-conspirator during and in furtherance of the conspiracy do not have the same unreliability as confessions. Thus, *Bruton* does not prohibit the use as evidence of co-conspirators' statements against other co-conspirators. *See United States v. Archbold-Newball,* 554 F.2d 665, 677 (5th Cir. 1977).

### III.

■ The defendant moved the district court to sever her trial from co-defendant Bracy's. The district court denied defendant's motion. A district judge's decision denying severance is reviewable only for an abuse of discretion. *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Rowan,* 518 F.2d 685, 690 (6th Cir. 1975).

■ Defendant's first argument for severance of her trial is that she and Bracy planned inconsistent defenses. Defendant's planned defense was the prosecution's lack of substantial evidence to support a verdict of guilt beyond a reasonable doubt. Defendant stated that Bracy's planned defense was an entrapment. Different defenses by co-defendants do not require a severance of their trials. To prevail, the defendant must show that "antagonism between co-defendants will mislead or confuse the jury." *United States v. Vinson,* 606 F.2d 149, 154 (6th Cir. 1979). No such showing has been made. Defendant's second argument for severance is that only co-defendant Bracy was named in an additional count of assaulting a federal officer. Defendant's reliance upon *United States v. Reynolds,* 489 F.2d 4 (6th Cir. 1973), is misplaced. In *Reynolds,* a single indictment named one defendant in each of four counts and another defendant only in the latter two counts. There was no connection between counts one and two (possession and sale of heroin) and counts three and four (possession and sale after illegal importation of heroin). The indictment neither alleged a connection nor a conspiracy between the co-defendants. Separate trials for the co-defendants in *Reynolds* were required because prejudice due to the risk of confusion results from trying co-defendants together on similar but unrelated offenses. In the instant case, the count of aiding and abetting, charged against both defendants, arises from mutual involvement in one transaction. The additional count against Bracy of assault against a federal officer is not similar to the counts of aiding and abetting. Defendant has failed to demonstrate any prejudice from her having been tried jointly with Bracy.

### IV.

The district court ordered the prosecution to provide the defendant a witness list at least forty-eight hours before the trial commenced. The prosecution provided the witness list the morning of the trial. The district court permitted defense counsel an opportunity to review the witness list, but ruled against defendant's motion to dismiss. Defendant appeals this ruling.

■ It is well recognized that defendants cannot obtain lists of prosecution witnesses as a matter of right, although the district court has discretion to order the prosecution to produce it. *United States v. Weatherspoon,* 581 F.2d 595 (7th Cir. 1978); *United States v. Harris,* 542 F.2d 1283 (7th Cir.), *cert. denied sub nom. United States v. Clay,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1976). We do not condone the prosecution's failure to comply with the district court's order. However, the fashioning of a proper remedy to ameliorate any potential

---

5. The co-conspirator exception to the hearsay rule is applicable to cases even though no conspiracy has been charged. See *United States v. Spencer,* 415 F.2d 1301 (7th Cir. 1969). *United States v. Rinaldi,* 393 F.2d 97, 99 (2d Cir.), *cert. denied,* 393 U.S. 913, 89 S.Ct. 233, 21 L.Ed.2d 198 (1968). In the present case the district court found that the government had proved by a preponderance of the evidence that Bracy and the defendant were joint venturers and Bracy's statements were made in specific furtherance of the venture. (App. 108). *See also United States v. Enright,* 579 F.2d 980 (6th Cir. 1978). In this Circuit it is not necessary that such a finding be predicated solely on evidence independent of the implicating hearsay. *United States v. Vinson,* 606 F.2d 149 (6th Cir. 1979).

prejudice to the defendant's ability to prepare an effective defense is within the district judge's discretion. Inasmuch as there were few witnesses, their identity was revealed by other discovery, and the prosecution's theory of the case was relatively straightforward, we do not believe the district court abused its discretion in denying the motion to dismiss.

Accordingly, the judgment of the district court is AFFIRMED.