**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Glen McCULLAH, Willard Petrey, James Tankersley, and Ewell Scott,**
**Defendants-Appellants.**

**Nos. 82–5222, 82–5223, 82–5235 and 82–5237.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 24, 1983.

Decided Sept. 27, 1984.

Peter Alliman, argued, John K. Harber, Pryor, Flynn & Priest, Richard R. Baumgartner, argued, Kerr & Ray, Robert C. Edwards, argued, Knoxville, Tenn., for defendants-appellants.

John W. Gill, U.S. Atty., Robert E. Simpson, Asst. U.S. Atty., argued, Knoxville, Tenn., for plaintiff-appellee.

Before JONES and WELLFORD, Circuit Judges, and RUBIN, District Judge.*

WELLFORD, Circuit Judge.

Defendants appeal their convictions in this case involving stolen vehicles. Defendant McCullah raises one set of objections to the proceedings below; defendants Petrey, Tankersley, and Scott raise another; and all defendants challenge the admission of certain hearsay statements. We affirm the convictions.

**I.**

Glen McCullah, Bruce North, Willard Petrey, Jr., Ewell Scott, James Tankersley, and James Veach were charged in a four-count indictment in the Eastern District of Tennessee on November 20, 1981. The indictment charged a scheme to deal in stolen vehicles. All defendants were originally named in count I, which alleged a conspiracy to transport stolen vehicles in violation of 18 U.S.C. § 2312 [1] and to receive or sell stolen vehicles in violation of 18 U.S.C.

---

* Honorable Carl B. Rubin, Chief Judge, United States District Court, Southern District of Ohio, sitting by designation.

1. 18 U.S.C. § 2312 provides

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

§ 2313;[2] prior to trial, however, the government moved that a *nolle prosequi* be entered without prejudice on the conspiracy charge as to all defendants but Veach and McCullah, and the motion was granted. Count II charged each defendant, aided and abetted by all others, with transporting a stolen Caterpillar D8H tractor from Kentucky to Tennessee in violation of 18 U.S.C. § 2312. Count III charged each defendant but McCullah with aiding and abetting the sale of the tractor in violation of 18 U.S.C. § 2313. Count IV charged defendant McCullah with concealing the tractor in violation of 18 U.S.C. § 2313.

The jury acquitted defendant Veach on all counts in which he was named. Defendant McCullah was found guilty on counts I and IV, but was acquitted on count II. Defendants North, Petrey, Scott, and Tankersley were found guilty on counts II and III. Each of the convicted defendants appealed, but North's appeal was voluntarily dismissed. The appeals of McCullah, Petrey, Scott, and Tankersley have been consolidated and are now before the court.

At trial, the government sought to prove a relatively simple scheme involving a Caterpillar tractor. As it pertained to the defendants currently before the court, the government's theory and proof was to the effect that defendants Petrey, Scott, and Tankersley arranged to steal the tractor in Kentucky. They then purportedly transported the tractor to Tennessee, where it was purchased by defendant McCullah.

## II.

Defendant McCullah challenges the nature of certain testimony against him, the judge's response to a jury question, the government's conduct regarding the identity of a potential witness, and the sufficiency of the evidence to support his conviction.

### ·A.

McCullah raises two issues that do not require extended discussion. First,

he disputes the propriety of government agent Cloninger's testimony. In describing the location of the stolen tractor on July 7, 1981, Cloninger testified that the tractor was "hidden" under some trees. McCullah objects that this constituted the forbidden expression of an opinion. But Fed.R.Evid. 701 permits nonexpert opinion testimony when the opinion, as here, is "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony." *See United States v. Skeet*, 665 F.2d 983, 985 (9th Cir.1982); *Stone v. United States*, 385 F.2d 713, 716 (10th Cir. 1967), *cert. denied*, 391 U.S. 966, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968). The testimony was therefore proper. Second, McCullah objects to the trial court's statement in response to a question from the jury. However, he made no objection at the time to the court's statement, and the statement was not plain error. McCullah is thus precluded from raising this issue on appeal. *See* Fed.R.Crim.P. 30; *Hamling v. United States*, 418 U.S. 87, 135, 94 S.Ct. 2887, 2916, 41 L.Ed.2d 590 (1974).

### B.

The bill of sale delivered to McCullah with the stolen tractor listed the seller as Ray Garland. McCullah's defense at trial was that he had not conducted business with the other individuals charged in this conspiracy, but had instead dealt with someone using the name "Garland" concerning purchase of the tractor. Prior to trial, McCullah requested information from the prosecution; the request could be construed as a request for any information regarding an individual who had met with McCullah in the circumstances described. The government revealed no information. At trial, however, the government called Bob Draughn to the stand. Draughn, who matched the description given for the man who had allegedly used the name Ray Gar-

---

**2.** 18 U.S.C. § 2313 provides

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

land, testified that he had indeed met with McCullah prior to the delivery of the tractor in this case. While Draughn agreed with McCullah's story that the two had met at a machinery and parts concern in Corbin, Kentucky, during the latter part of December 1980 or early January 1981 and discussed the sale of a truck, Draughn denied that he had ever discussed selling McCullah a Caterpillar tractor. Draughn further stated that he had never used the name Ray Garland. McCullah argues that the government's failure to inform McCullah of Draughn's identity prior to trial violated his Sixth Amendment right to cross-examine Draughn and his due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (imposing obligation on prosecutor to reveal evidence favorable to defendants in some circumstances).

 By failing to reveal Draughn's identity prior to trial, McCullah argues, the government impermissibly handicapped McCullah's ability to cross-examine Draughn. This court, however, has firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government. *See United States v. Dark,* 597 F.2d 1097, 1099 (6th Cir.1979) (per curiam) (citing *United States v. Conder,* 423 F.2d 904, 910 (6th Cir.), *cert. denied,* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970)), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 183 (1979). Even if one argues that broader discovery rules in this area "might be desirable, the Constitution surely does not demand that much." *United States v. Agurs,* 427 U.S. 97, 109, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

McCullah's *Brady* claim must also fail. The *Brady* doctrine concerns "the discovery, *after trial,* of information which had been known to the prosecution but unknown to the defense." *Agurs,* 427 U.S. at 103, 97 S.Ct. at 2397 (emphasis added). *Brady* imposes an obligation of disclosure on the prosecution only when the information in the prosecutor's possession is favorable to the defendant. *See, e.g., Agurs,* 427 U.S. at 112 n. 20, 96 S.Ct. at 2401 n. 20; *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. The information possessed by the government prior to trial concerning Draughn, while largely detrimental to McCullah, nevertheless did include arguably favorable information. The existence of Draughn, who admitted meeting McCullah at the time and place McCullah had claimed and who matched the description McCullah had given, perhaps lends some support to McCullah's story. But McCullah has identified no other information in the prosecutor's possession that would have benefitted McCullah's case; and the corroborative aspects previously mentioned were fully disclosed when the government called Draughn to the stand to testify.[3] This is not a case in which the testimony at trial was so complicated that its exculpatory aspects could not be readily identified by defense counsel, explored on cross-examination, and argued to the jury. Nor was the prosecutor's decision to present Draughn's testimony justified solely by a desire to delay defendant's access to its exculpatory aspects; rather the decision was supported by the substantially damaging nature of Draughn's testimony. McCullah characterizes the prosecution's conduct in this case as amounting to bad faith. Given the vagueness of defendant's request for material, one cannot say with assurance that the defendant's contention is true. True or not, the contention is irrelevant. *See, e.g., Agurs,* 427 U.S. at 110, 96 S.Ct. at 2400; *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Nor do the cases cited by defendant support his arguments here. *United States v. Esposito,* 523 F.2d 242 (7th Cir.1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768 (1976), *United States v. Bryant,* 439 F.2d 642 (D.C.Cir. 1971), *United States v. Armigo-Martinez,* 669 F.2d 1131 (6th Cir.), *vacated,* 459 U.S. 810, 103 S.Ct. 34, 74 L.Ed.2d 47 (1982), and

---

**3.** We are not called upon to decide whether the prosecutor would have been obligated to disclose the exculpatory evidence in this case if Draughn had not testified fully regarding those aspects at trial.

*United States v. Caldwell,* 543 F.2d 1333 (D.C.Cir.1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), did not involve exculpatory material that was disclosed at trial. McCullah therefore was not deprived of his rights under *Brady.*

### C.

In evaluating a claim that the evidence is insufficient to support a conviction, the court must weigh the evidence in the light most favorable to the prosecution and determine whether a reasonable mind might fairly find guilt beyond a reasonable doubt. *United States v. Gibson,* 675 F.2d 825, 829 (6th Cir.1982), *cert. denied,* 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). The evidence to be considered may include circumstantial proof and reasonable inferences drawn from the evidence. *United States v. Flaherty,* 668 F.2d 566, 579 (1st Cir.1981). McCullah argues that the evidence was insufficient to establish his knowledge that the Caterpillar tractor was stolen. He therefore contends that his convictions may not stand. A review of the evidence, however, demonstrates the futility of McCullah's claim in this regard.

Unindicted co-conspirator Elmon Jones testified that McCullah had been told of the scheme to steal the tractor prior to the act. While McCullah attempts to avoid the force of that testimony by stressing the possibility that an alleged accomplice will perjure himself in hopes of favorable government treatment, this court has firmly stated that a conviction may be valid even if supported only by accomplice testimony provided that the jury was properly cautioned concerning the testimony. *See, e.g., United States v. McCallie,* 554 F.2d 770, 772 (6th Cir.1977). Because the district judge here warned the jury of the hazards of accomplice testimony, *see* app. at 306; *see also id.* at 244 (cross-examination of Jones revealing that Jones' plea arrangement required him to testify in related proceedings), the conviction here could rest entirely on Jones' testimony.

Other evidence also supports the conclusion that McCullah knew the tractor was stolen. McCullah paid $15,000 for the vehicle. Given that the tractor was worth $46,000 and that McCullah was a used-equipment specialist, a reasonable person might conclude that McCullah knew the vehicle was stolen. In addition, after taking possession of the tractor, McCullah learned that repairs were needed. To acquire the proper parts, McCullah needed to document his ownership of the tractor; but the documents that accompanied the tractor were not in order. Rather than acting surprised that the tractor in his possession did not match the description in the papers, McCullah set out to obtain both a serial plate and a new bill of sale for the tractor, and McCullah's father admitted to removing a serial number from the tractor in furtherance of the plan.

### III.

Defendants Petrey, Tankersley, and Scott argue that their convictions are barred by the double jeopardy clause. They further contend that the district court mishandled their attorneys' requests for fees under the Criminal Justice Act, 18 U.S.C. § 3006A.[4]

### A.

Petrey, Tankersley, and Scott were previously prosecuted and convicted in U.S. District Court in London, Kentucky, for conspiring in violation of 18 U.S.C. § 371 to violate 18 U.S.C. § 2314 by transporting in interstate commerce stolen goods having a value exceeding $5,000. They were also

---

**4.** Petrey, Tankersley, and Scott also complain about the district judge's instruction to the jury. In reading count I of the indictment to the jury, the judge referred to Petrey, Tankersley, and Scott even though they had been dropped from the count before trial. Defendants, however, made no objection to the charge before the jury retired; the issue is therefore waived unless plain error is shown. *See supra* p. 352. That showing has not been made here. Nor have defendants demonstrated prejudice resulting from the district court's action: the jury did not return a verdict against these defendants on count I, and defense counsel told the jury in opening argument that these defendants had been dropped from count I.

convicted in the same proceeding of several substantive violations of § 2314 involving various pieces of stolen heavy machinery. Although the theft of the piece of equipment at issue in this case was not charged in the Kentucky prosecution, the theft involved here occurred in the same general time span during which the conspiracy charged in the Kentucky prosecution took place.[5] Indeed, the relationship between the previously charged conspiracy and the present case was sufficiently close that the district court was dubious as to the prosecution's right to charge Petrey, Tankersley, and Scott in the conspiracy count here; before trial, the court dismissed the count as to these defendants on the prosecution's motion.

On appeal, defendants argue that double jeopardy principles bar their conviction on the substantive counts alleged here. Even assuming an overlap between the conspiracy charged in Kentucky and the substantive counts charged here, however, conspiracy to commit a given crime is generally a distinct offense from commission of that crime, see *Pereira v. United States,* 347 U.S. 1, 11–12, 74 S.Ct. 358, 364–365, 98 L.Ed. 435 (1954); *Pinkerton v. United States,* 328 U.S. 640, 643–44, 66 S.Ct. 1180, 1181–1182, 90 L.Ed. 1489 (1946), even if commission of the crime is listed as an overt act in the conspiracy charge, see *id.* at 644, 66 S.Ct. at 1182.

Nor does defendants' observation that they were charged with aiding and abetting in the substantive counts preclude conviction.

Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy. *Nye & Nissen v. United States,* [336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949)].

*Pereira,* 347 U.S. at 11, 74 S.Ct. at 364; see *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (no double jeopardy violation in prosecuting for two offenses stemming from same transaction when each offense requires proof of a fact that the other does not).

Defendants' reliance on *United States v. Austin,* 529 F.2d 559 (6th Cir.1976), is misplaced. In *Austin,* the court overturned a conspiracy conviction linked with two substantive counts "[s]ince proof of the substantive offenses ... also proved every essential element of the conspiracy."[6] *Id.* at

---

5. The prosecutor in the Kentucky case knew of the theft of machinery at issue here and sought to introduce evidence concerning the theft even though the defendants there were not charged with the theft. But this circuit, in *United States v. Garner,* 529 F.2d 962, 971–72 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976), explicitly rejected a double-jeopardy doctrine that would preclude trial on a crime simply because it arose out of the same transaction as another crime for which the defendant had already been tried.

6. In *Austin,* the defendant, a government employee, had solicited and accepted bribes in return for government contracts. The indictment charged him with aiding and abetting the offering of a bribe in violation of 18 U.S.C. § 201(f), accepting a bribe in violation of 18 U.S.C. § 201(g), and conspiring to violate §§ 201(f)–(g). The *Austin* approach has not fared well in the other circuits. It has been flatly rejected by the Fifth Circuit, *United States v. Pearson,* 655 F.2d 569, 570 (5th Cir.1981) (per curiam) (citing *United States v. Cowart,* 595 F.2d 1023, 1032–34 (5th Cir.1979)); *see United States v. Bankston,*

603 F.2d 528, 534 (5th Cir.1979) (appropriate test looks "not to the evidence adduced at trial but focuse[s] on the elements of the offense charged"), and the Ninth Circuit, *United States v. Wylie,* 625 F.2d 1371, 1381 n. 14 (9th Cir.1980) (citing *United States v. Kearney,* 560 F.2d 1358, 1367 (9th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977)), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). The First Circuit purported to distinguish *Austin* but did so on grounds that would generate a different result in *Austin* itself. *See United States v. DeVincent,* 632 F.2d 155, 159 n. 8 (1st Cir.1980) (noting that conspiracy, unlike substantive count, requires proof of an agreement and that substantive crime, unlike conspiracy count, requires proof of commission or an attempt), *cert. denied,* 450 U.S. 984, 101 S.Ct. 1523, 67 L.Ed.2d 820 (1981); *see also United States v. Lanci,* 669 F.2d 391, 394 (6th Cir.) (same), *cert. denied,* 457 U.S. 1134, 102 S.Ct. 2960, 73 L.Ed.2d 1350 (1982). The Second Circuit cited *Austin* in *United States v. Sperling,* 560 F.2d 1050, 1055 (2d Cir.1977), but adhered to authorities requiring attention to the elements

564. But this dicta has not been followed. This court in *United States v. Foster,* 566 F.2d 1045, 1048 (6th Cir.1977), *cert. denied,* 435 U.S. 917, 98 S.Ct. 1473, 55 L.Ed.2d 509 (1978), held *Austin* inapplicable when the conspiracy charged "could be proved without proof of the offenses charged in the [substantive] counts under consideration."[7] Examination of the Kentucky indictment makes clear that proof of the Kentucky conspiracy did not require proof of the substantive counts charged here.

Moreover, *Austin* arose under the federal bribery laws. *See supra* note 6. Whether multiple punishment for two federal crimes is precluded by the double jeopardy clause turns on Congressional intent. *Iannelli v. United States,* 420 U.S. 770, 782–86, 95 S.Ct. 1284, 1292–1294, 43 L.Ed.2d 616 (1975). While the federal bribery laws can be violated without a conspiracy taking place, *Austin,* 529 F.2d at 563 (offering bribe a crime whether accepted or not), the paradigmatic bribery transaction that Congress sought to frustrate involves an offer and an acceptance. The *Austin* approach may therefore be justified in the context of the bribery laws by recognition that Congress may have set the penalties under the bribery statutes with an eye toward the "successful" bribe.[8] Such a rule is not justified, however, in a case like this in which the paradigm of the underlying substantive crime does not itself involve a conspiracy. *Cf. Pereira,* 347 U.S. at 11, 74 S.Ct. at 364 (recognizing importance of whether agreement required to commit the substantive offense). We find *Austin* therefore to be inapplicable here.

### B.

Petrey, Tankersley, and Scott were represented at trial by appointed counsel. After trial, the attorneys sought reimbursement under the Criminal Justice Act, which establishes the mechanism through which appointed counsel is reimbursed in criminal matters in the federal courts. The act sets maximum hourly rates at which appointed counsel can be reimbursed; it also sets maximum total fees that an attorney can be paid for trials regardless of hours spent unless the trial judge certifies that excess payment is warranted by the facts of the particular case. Initial responsibility for awarding fees rests with the district court judge.

In this case, the appointed attorneys sought reimbursement of their expenses and payment of fees calculated at the statutorily set maximum of twenty dollars per hour for out-of-court time and thirty dollars per hour for in-court time. *See* 18 U.S.C. § 3006A(d)(1).[9] All of the bills for the eight-day trial exceeded the statutorily prescribed maximum total fee of $1,000 available without certification by the district court. *See id.* § 3006A(d)(2)–(3).[10] Not

---

of the offense rather than to the evidence presented at trial when determining double jeopardy questions.

7. *See also United States v. Fife,* 573 F.2d 369, 373 (6th Cir.1976) (distinguishing *Austin* as a case in which the indictment was drawn in such a way that the substantive offenses "in effect charged the same agreement or concert of action" as charged in the conspiracy), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977).

8. This is not to say that *Austin* always precludes conviction for bribery and conspiracy to bribe. *See United States v. Foster, supra.*

9. 18 U.S.C. § 3006A(d)(1) provides

(1) **Hourly Rate.**—Any attorney appointed pursuant to this section or a bar association or legal aid agency or community defender organization which has provided the appointed attorney shall, at the conclusion of the representation or any segment thereof, be compensated at a rate not exceeding $30 per hour for time expended in court or before a United States magistrate and $20 per hour for time reasonably expended out of court, or such other hourly rate, fixed by the Judicial Council of the Circuit, not to exceed the minimum hourly scale established by a bar association for similar services rendered in the district.

10. 18 U.S.C. § 3006A(d)(2)–(3) provides

(2) **Maximum amounts.**—For representation of a defendant before the United States magistrate or the district court, or both, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $1,000 for each attorney in a case in which one or more felonies are charged, and $400 for each attorney in a case in which only

only did the district court refuse to certify the necessity of excess compensation in this case; it also awarded each attorney the same amount, $800, without regard to the varying number of hours that each claimed to have worked.[11] As to one attorney who claimed 119.5 hours of work on the case, that award amounted to a fee of under seven dollars per hour.

The United States argues that the award of attorney's fees under the act is not appealable. The courts of appeals have divided on the appealability of fee awards under the act. The Seventh and Ninth Circuits have held that such awards are not appealable. *See United States v. Walton (In re Baker),* 693 F.2d 925 (9th Cir.1982) (per curiam);[12] *United States v. Smith,* 633 F.2d 739 (7th Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). Other circuits have permitted appeals under the act without discussing jurisdiction. *See United States v. Turner,* 584 F.2d 1389 (8th Cir.1978); *see also Camenisch v. United States,* 553 F.2d 1271, 1274 n. 1 (D.C.Cir.1976) (dicta in unpublished opinion reprinted as appendix to dissent from denial of rehearing en banc); *cf. United States v. Ketchem,* 420 F.2d 901, 904 (4th Cir.1969) (without discussing appealability, court reverses district court's denial of expenses under the act). The Fifth Circuit has refused to consider fee appeals when brought along with the appeal on the merits but has not said whether fee awards may be appealed otherwise. *See United States v. Todd,* 475 F.2d 757, 759 n. 3 (5th Cir.1973) (per curiam); *United States v. Sullivan,* 456 F.2d 1273, 1275 (5th Cir.1972) (per curiam). As to the existence of an administrative remedy under the act, both the Second Circuit and the D.C. Circuit have held that the provision of the act requiring the approval of the chief judge of the circuit before payment of excess compensation authorized by a district judge[13] does not permit the chief judge to review a district judge's decision not to authorize excess compensation. *See In re Gross,* 704 F.2d 670 (2d Cir.1983) (opinion of Feinberg, C.J.); *United States v. Johnson,* 549 F.Supp. 78, 80 (D.D.C.1982) (opinion of C.J. Robinson of the D.C. Circuit on motion to certify excess compensation).

Whether awards of this sort are appealable need not now be decided in this case because of defendants' failure to object to the fees and costs awarded by the district court judge. Defendants should permit the district judge an opportunity to respond to their objections concerning these awards before basing an appeal on this action. Appealability of an order may then be squarely presented for review if defendants' counsel remain unsatisfied after a reasonable opportunity for the district judge to reconsider his prior action in this respect.

misdemeanors are charged. For representation of a defendant in an appellate court, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $1,000 for each attorney in each court. For representation in connection with a post-trial motion made after the entry of judgment or in a probation revocation proceeding or for representation provided under subsection (g) the compensation shall not exceed $250 for each attorney in each proceeding in each court.

(3) **Waiving maximum amounts.**—Payment in excess of any maximum amount provided in paragraph (2) of this subsection may be made for extended or complex representation whenever the court in which the representation was rendered, or the United States magistrate if the representation was furnished exclusively before him, certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit.

**11.** Excluding expenses, one attorney requested $2,830; using the same formula, another requested $1,490. The court awarded the same fee to each.

**12.** *But see United States v. Poland (In re Derickson),* 640 F.2d 946 (9th Cir.1981) (per curiam) (reversing district court's determination to award no fees under act), *discussed in Baker,* 693 F.2d at 926 n. 1 (distinguishing *Derickson* as case in which no award granted); *cf. United States v. Fields,* 722 F.2d 549, 550 (9th Cir.1983) (permitting challenge to district court's denial of investigatory funds under a different section of the act).

**13.** *See* 18 U.S.C. § 3006A(d)(3), *quoted supra* note 10.

## IV.

All defendants maintain that the district court committed reversible error by admitting certain statements of unindicted co-conspirator Jones pursuant to Fed.R. Evid. 801(d)(2)(E), the co-conspirator exception to the hearsay rule. The attacks travel several paths to the same end. First, defendants Petrey, Tankersley, and Scott argue that the admission of the hearsay against them under the co-conspirator exception was error because they had been dropped from the conspiracy count before trial commenced. The proof in the cases indicated a joint venture in stealing and selling the Caterpillar tractor. Jones' testimony would have been admissible as to statements made by those engaged in the criminal venture even if no conspiracy had been charged at all. *See United States v. Kendricks,* 623 F.2d 1165, 1168 n. 5 (6th Cir.1980). Second, defendants argue that the court may not consider the hearsay itself in making the preliminary determination of conspiracy necessary to trigger the exception. *But see United States v. Cassity,* 631 F.2d 461, 464 (6th Cir.1980) (can consider hearsay); *Kendricks,* 623 F.2d at 1168 n. 5 (same). Third, defendants argue that the requisite preliminary showing of a conspiracy was not made. Given the admissibility of the contested hearsay itself on this issue, the claim is without merit. Fourth, defendants claim that the district court did not make the required findings before permitting the hearsay to go to the jury. This assertion is not supported by the record. Fifth, defendants argue that the judge erred by not making the findings in the presence of the jury. *But see United States v. Vinson,* 606 F.2d 149, 153 (6th Cir.1979) (to avoid prejudice, judge should not inform jury of preliminary finding of conspiracy), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Defendants' arguments against admission of Jones' testimony are therefore not persuasive.

## V.

Accordingly, the convictions of defendants McCullah, Petrey, Tankersley, and Scott are Affirmed.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I dissent only from the majority's decision to avoid resolution of the question of attorney's fees in this case. I believe defendant's counsel adequately notified the district court of the reasons they believed a larger award was necessary. Accordingly, I believe the question of the appealability of such awards is squarely presented and should be decided.

CARL B. RUBIN, District Judge, concurring.

I concur in the reasoning and conclusion reached by the majority in all portions with the exception of Section III B. As to such Section, I agree with the conclusion and write only to indicate a belief that an award of attorney fees under the Criminal Justice Act is not appealable.