803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee
v.
RONALD M. JENT, Defendant-Appellant.
 No. 86-5069.
 United States Court of Appeals, Sixth Circuit.
 Sept. 8, 1986.
 
 Before: MARTIN and GUY, Circuit Judges; and SUHRHEINRICH,* District Judge.
 PER CURIAM.
 
 
 1
 Ronald M. Jent appeals his conviction for embezzlement of funds from a Federal Deposit Insurance Corporation insured bank, in violation of 18 U.S.C. Sec. 656, and for making false entries with intent to defraud a Federal Deposit Insurance Corporation insured bank, in violation of 18 U.S.C. Sec. 1005. Finding no basis for reversal, we affirm.
 
 
 2
 Jent served as president of Morgantown Bank and Trust Company from January 1, 1981, until May 17, 1985. In early 1982, Jent began selling Investors Heritage Life Insurance Company credit protector insurance which insured loans greater than $40,000 for periods longer than ten years. Jent told three bank loan officers that he would divide the insurance commissions with them as an incentive to sell such policies. In February of 1982, at Jent's request one of these loan officers opened a credit protector Demand Deposit Account at the bank.
 
 
 3
 When Investors Heritage began sending commission checks to the bank, the checks were deposited to the credit protector account. The checks were made payable to the bank, not to Jent or any of the three loan officers. Jent's embezzlement conviction arose from the fact that he periodically withdrew the money in the account, paid the loan officers a percentage in cash and kept the remainder for himself. The officers received a total of approximately $6,200, while Jent received approximately $40,100.
 
 
 4
 The transactions leading to Jent's conviction for making false entries with intent to defraud the bank revolved around sales of the bank's stock in the fall of 1984. On three separate occasions, Jent purchased bank stock for himself paid for by issuing a cashier's check. In normal practice, a bank must receive payment for the amount of a cashier's check at the time that it is issued. A copy of the check is then processed by the bank, and the amount of the check will appear on the demand deposit account trial balance the following day. On each of the three occasions, Jent failed to follow this normal banking procedure. He failed to make or receive payment for the check and retained the bank's copy of the check, causing the demand deposit account trial balance to be false in the amount of these checks. Jent eventually negotiated a loan with another bank and paid for the checks on January 2, 1985. The bank's board of directors was never approached concerning the purchase of the stock by Jent and no one had ever been authorized to purchase stock for himself with a cashier's check without payment having been made.
 
 
 5
 Concerning his embezzlement conviction, Jent argues that the government failed to prove that the insurance commissions were money, funds, or credits of the bank, an essential element of the crime as charged in the indictment. In summary, Jent argues that under Kentucky statutes the bank could not have legally received the funds. He claims that following this Court's decision in Salyersville National Bank v. United States, 613 F.2d 650 (6th Cir. 1980), the funds could not have been funds of the bank under 28 U.S.C. Sec. 656. Jent further argues that although he himself could not legally sell the insurance because he did not have a license to sell credit protector insurance, he had the superior right to the commissions as he had an implied agency contract with Investors Heritage to sell the insurance. We find these arguments without merit.
 
 
 6
 Although Morgantown Bank and Trust Company was not, and arguably could not be, a licensed seller of credit protector insurance, the bank actually received the insurance commission checks made payable to it. In Salyersville National Bank, the Internal Revenue Service assessed the taxpayer bank on the amount of commissions for credit life insurance purchased by the bank's borrowers from the bank president who was a licensed life insurance agent. This Court determined that the Internal Revenue Service could not allocate insurance commissions to the bank as income because the bank could not legally receive the funds as an unlicensed agent. In that case, however, Salyersville National Bank never received the funds; Morgantown Bank did and the commissions thereby became funds of the bank capable of being embezzled by Jent. We find that no other decision cited by Jent challenges this conclusion. Under these circumstances, moreover, Jent certainly did not have the superior right to the funds vis-a-vis Morgantown Bank.
 
 
 7
 Concerning his conviction for making false entries with intent to defraud the bank, Jent claims that there was insufficient evidence of an intent to injure or defraud the bank. Our standard of review is well-established:
 
 
 8
 In evaluating a claim that the evidence is insufficient to support a conviction, the court must weigh the evidence in the light most favorable to the prosecution and determine whether a reasonable mind might fairly find guilt beyond a reasonable doubt. United States v. Gibson, 675 F.2d 825, 829 (6th Cir. 1982), cert. denied, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). The evidence to be considered may include circumstantial proof and reasonable inferences drawn from the evidence. United States v. Flaherty, 668 F.2d 566, 579 (1st Cir. 1981).
 
 
 9
 United States v. McCullah, 745 F.2d 350, 354 (6th Cir. 1984). Under 18 U.S.C. Sec. 656, evidence of a reckless disregard for the interests of the bank will support an inference of an intent to injure or defraud the bank, United States v. Cooper, 577 F.2d 1079, 1083 (6th Cir.), cert. denied, 439 U.S. 868 (1978); the same principle applies to the element of intent to injure in this case.
 
 
 10
 The facts are that on three separate occasions, Jent failed to make or receive payment for a cashier's check and retained the bank's copy of the check, thus causing the demand deposit account trial balance to be false in the amount of the check. Jent argued that the bank had an established policy that permitted him to purchase stock in this manner. The jury, however, could have rejected this argument as distinguishable for any number of reasons; for example, unlike on prior occasions, Jent purchased the stock for himself and eventually paid for it himself without informing the board of directors. Viewing the evidence in the light most favorable to the prosecution, this Court finds that a reasonable juror could have found Jent guilty beyond a reasonable doubt.
 
 
 11
 Affirmed.
 
 
 
 *
 The Honorable Richard F. Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation