**MARSH MEDIA, LTD., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and the United States of America, Respondents.**

Nos. 84–4808, 85–4319.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1986.

Rehearing and Rehearing En Banc Denied Sept. 29, 1986.

Bert W. Rein, Washington, D.C., Liskow & Lewis, Larry M. Roedel, New Orleans, La., Wiley & Rein, John C. Quale, James R. Bayes, Diane Z. Goldman, Washington, D.C., for petitioner.

David M. Hunsaker, McLean, Va., for amicus curiae Freedom of Expression Foundation.

Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Robert B. Nicholson, George Edelstein, William French Smith, Atty. Gen., U.S. Dept. of Justice, Sheldon Guttmann, Martin A. Blumenthal, Attys., William J. Tricarico, Secretary, F.C.C., Gregory M. Christopher, Edwin Meese, III, Atty. Gen., Washington, D.C., for respondents.

Wilhelmina R. Cooke, Citizens Comm. Cent., Washington, D.C., for Telecommunications Research and Action Center.

David G. Rozzelle, Frank R. Jazzo, Washington, D.C., for Western Communications, Inc.

Before THORNBERRY, POLITZ and RANDALL, Circuit Judges.

POLITZ, Circuit Judge:

March Media, Ltd. petitions for review of two orders of the Federal Communications Commission which declined to reconsider a regulation limiting cross-ownership of a television station and a cable television system in the same market (our docket No. 84–4808) and required Marsh to divest itself of part of its interest in an Amarillo, Texas, cable system (our docket No. 85–4319). We deny the petitions for review.

### Background

In 1965 Marsh, owner of Amarillo television station KVII–TV, and three partners received a franchise to establish a cable television system in Amarillo. Each partner received a 25% interest in the cable venture, called Total Television of Amarillo (TTA), and a right of first refusal should any other partner choose to sell its interest.

During the 1960s, consistent with its goal of maintaining diversity in mass-media ownership, the Commission became concerned with the effect of common ownership of television stations and cable systems in the same market area, *see Notice of Inquiry in Docket 15415*, 29 Fed.Reg. 5416 (April 16, 1964), but determined that restrictions on such ownership were not warranted. *First Report in Docket 15415*, 1 F.C.C.2d 387 (1965). For several years, the issue was treated on an *ad hoc* basis. *See, e.g., General Electric Cable Corp.*, 10 F.C.C.2d 198 (1967); *Lorain Community Broadcasting*, 13 F.C.C.2d 106 (1968); *see also Citizens TV Protest Committee v. FCC*, 348 F.2d 56 (D.C.Cir.1965). The Commission noticed its intention to re-examine the matter in Docket 17371, 7 F.C.C.2d 853 (1967). As a result of its inquiry, the Commission proposed to prohibit prospectively all television station-cable system common ownership in the same market. Compliance was to be accomplished by divestiture. *Notice of Proposed Rulemaking in Docket 18397*, 15 F.C.C.2d 417 (1968). In 1970, the Commission adopted the restrictions as proposed. *Second Report and Order in Docket 18397*, 23 F.C.C.2d 816 (1970), *reconsideration denied in part*, 39 F.C.C.2d 377 (1973).

In 1975, after enacting a prospective ban on co-located daily newspaper-broadcast combinations and ordering divestiture of existing combinations in several "egregious" cases, *Second Report and Order in Docket 18110*, 50 F.C.C.2d 1046 (1975), *amended*, 53 F.C.C. 589 (1975), *aff'd sub nom. FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978), the Commission decided to reconsider its *Second Report and Order in Docket 18397, supra*, and instituted Docket 20423, 52 F.C.C.2d 161 (1975). The Commission then promulgated the regulation which forms the basis for Marsh's petitions, *Second Report and Order in Docket 20423*, 55 F.C.C.2d 540 (1975), *reconsideration denied*, 58 F.C.C.2d 596 (1976), codified at 47 C.F.R. § 76.501.

The 1975 regulation prohibited cable system ownership by a person owning an interest in a television station whose predicted Grade B contour, defined in 47 C.F.R. § 73.684, "overlaps in whole or in part the service area of" the cable system. 47 C.F.R. § 76.501(a)(2). The regulation contained a "grandfather" clause exempting

cable system interests owned on July 1, 1970. 47 C.F.R. § 76.501(b)(1). Divestiture was required for interests acquired after that date.

In 1977 Stauffer Publications, one of the TTA partners, proposed to acquire the interests of two of the other partners. At that time Stauffer did not own any interest in any Amarillo television station. Marsh exercised its right of first refusal and bought the interest of one of the two selling partners. Pursuant to the Rule, 47 C.F.R. § 76.501, the Commission ordered Marsh to divest itself of the recently acquired 25% interest, based on its determination that the interest was not grandfathered.[1] *Marsh Media, Ltd.*, 67 F.C.C.2d 1516 (1978), *reconsideration denied*, 68 F.C.C.2d 712 (1978). Marsh sought review by this court but, by consent, the matter was remanded to the Commission when it determined to reconsider the Rule in light of the Supreme Court's intervening decision in *FCC v. National Citizens Committee for Broadcasting. Further Notice of Proposed Rulemaking in Docket 20423*, 81 F.C.C.2d 150 (1980).

After considering the comments received in response to the *Further Notice*, the Commission issued its *Third Report and Order in Docket 20423*, 97 F.C.C.2d 65 (1984), *reconsideration denied*, FCC Docket No. MM 85–232 (May 3, 1985), reaffirming its decision to prohibit common ownership interests in co-located television stations and cable systems which came into being after July 1, 1970.[2] In its enactment of Section 613(a) of The Cable Communications Policy Act of 1984, Congress codified the Commission's regulatory scheme on cross-ownership, 47 U.S.C. § 533(a).[3] *See* H.R.Rep. No. 98–934, 98th Cong., 2d Sess. 56, *reprinted in* 1984 U.S. Code Cong. & Admin. News 4655, 4693.

In petition No. 84–4808, Marsh seeks review of the order of the Commission dismissing as moot its 1980 petition to institute a rulemaking proceeding to delete 47 C.F.R. § 76.501 on the ground that the Commission had no discretion or authority

**1.** Marsh's initial 25% interest in TTA, acquired in 1968, was grandfathered by the Rule; its divestiture was not required. The Commission did not consider the right of first refusal to be a pre-Rule vested interest.

**2.** As amended through October 1, 1984, 47 C.F.R. § 76.501 provides:

(a) No cable television system (including all parties under common control) shall carry the signal of any television broadcast station if such system directly or indirectly owns, operates, controls, or has an interest in:

(1) A national television network (such as ABC, CBS, or NBC); or

(2) A TV broadcast station whose predicted Grade B contour, computed in accordance with § 73.684 of Part 73 of this chapter, overlaps in whole or in part the service area of such system (i.e., the area within which the system is serving subscribers).

(b) *Effective date.*

* * * * * *

(2) The provisions of paragraph (a)(2) of this section are not effective until November 8, 1987, as to ownership interests proscribed herein if such interests were in existence on or before July 1, 1970 (e.g., if franchise were in existence on or before July 1970), and will be applied to cause divestiture as to ownership interests proscribed herein only where the cable system is directly or indirectly, owned, operated, controlled by, or has an interest in a non-satellite television broadcast station which places a principal community contour encompassing the entire community and there is no other commercial non-satellite television broadcast station placing a principal community contour encompassing the entire community.

**3.** As is pertinent to this case, 47 U.S.C. § 533 provides:

(a) It shall be unlawful for any person to be a cable operator if such person, directly or through 1 or more affiliates, owns or controls the licensee of a television broadcast station and the predicted grade B contour of such station covers any portion of the community served by such operator's cable system.

* * * * * *

(c) The Commission may prescribe rules with respect to the ownership or control of cable systems by persons who own or control other media of mass communications which serve the same community served by a cable system.

* * * * * *

(f) This section shall not apply to prohibit any combination of any interests held by any person on July 1, 1984, to the extent of the interests so held as of such date, if the holding of such interests was not inconsistent with any applicable Federal or State law or regulations in effect on that date.

to delete the Rule after the enactment of § 613(a) of the 1984 Act. In No. 85–4319, Marsh seeks review of the denial of its petition for reconsideration of the *Third Report and Order in Docket 20423.* FCC Docket No. MM 85–232 (May 3, 1985). In denying Marsh's petition for reconsideration, the Commission also reaffirmed its 1978 decision that Marsh's 1977 interest in TTA violated the Rule and that its right of first refusal was not a grandfathered interest under the Rule and, therefore, not protected as such under the 1984 Act. The Commission ordered Marsh to divest itself of the 25% interest in TTA acquired in 1977. We consolidated the two petitions for review.

### Analysis

Marsh advances three arguments in support of its petitions for review: (1) the Commission had no statutory authority to promulgate 47 C.F.R. § 76.501 prior to enactment of the 1984 Act; (2) if the Rule was within the Commission's authority when promulgated, Marsh's 1977 interest in TTA does not violate the Rule because it is covered by the Rule's grandfather clause; and (3) if the Rule was within the Commission's pre–1984 Act authority and if Marsh's 1977 interest is not grandfathered, the Rule violates the first amendment.

### Authority to Promulgate the Rule

■ Marsh argues initially that the Rule is null because the Commission had no authority to promulgate the Rule until it explicitly was accorded jurisdiction over cable systems by the 1984 Act. If Marsh is correct and the Rule is thus voided, Marsh's 1977 interest is grandfathered by § 613(f) of the 1984 Act, 47 U.S.C. § 533(f).

Prior to the 1984 Act, the FCC's authority to regulate cable was "restricted to that reasonably ancillary to the effective performance of the Commission's various responsibilities for the regulation of television broadcasting." *United States v. Southwestern Cable Co.,* 392 U.S. 157, 178, 88 S.Ct. 1994, 2005, 20 L.Ed.2d 1001 (1968). This limitation was consistently recognized.

*See Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984); *FCC v. Midwest Video Corp.,* 440 U.S. 689, 99 S.Ct. 1435, 59 L.Ed.2d 692 (1979); *United States v. Midwest Video Corp.,* 406 U.S. 649, 92 S.Ct. 1860, 32 L.Ed.2d 390 (1972); *Midland Telecasting Co. v. Midessa Television Co.,* 617 F.2d 1141 (5th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *see generally* Meyerson, *The Cable Communications Policy Act of 1984: A Balancing Act on the Coaxial Wires,* 19 Ga.L.Rev. 543, 547–50 (1985); Comment, *FCC Authority Over Cable Television,* 1979 Wis.L. Rev. 962. Under the "reasonably ancillary" test, the FCC could generally act "only for ends for which it could also regulate broadcast television [or] ... to regulate to achieve 'long-established' goals or to protect its 'ultimate purposes.'" *Home Box Office, Inc. v. FCC,* 567 F.2d 9, 28 (D.C.Cir.), *cert. denied,* 434 U.S. 829, 99 S.Ct. 111, 54 L.Ed.2d 89 (1977).

Marsh maintains that as a direct regulation of cable television systems the Rule fails the reasonably ancillary test. This argument is off target. It is of course correct that prior to the 1984 Act the FCC had no direct authority over cable, just as it had no authority to regulate the print media. Nonetheless, the Supreme Court upheld the Commission's regulation limiting cross-ownership of co-located print and broadcast media as a valid exercise of the Commission's authority over the broadcast media. *FCC v. National Citizens Committee for Broadcasting.* The Rule now before us is likewise an exercise of the Commission's authority over television license holders. By the Rule the Commission seeks to regulate and limit a television station and a cable system in the same market area. As such, the Rule is within the Commission's authority to regulate the broadcast media, *id.,* 436 U.S. at 793–97, 98 S.Ct. at 2111–13. Marsh's contrary argument lacks persuasive force. We conclude that the Commission had the authority to

promulgate the Rule prior to enactment of the 1984 Act.[4]

*Application of the Rule*

■ Marsh next maintains that the Commission erroneously reads the grandfather clause, 47 C.F.R. § 76.501(b)(2). The Commission determined that the right of first refusal which Marsh acquired in 1968 was not an ownership interest covered by the grandfather clause, but was, rather, merely the equivalent of a conditional stock option. *Marsh Media, Ltd,* 67 F.C.C.2d at 1523. Marsh argues that it is illogical and irrational to grandfather owners of 100% cross-interests in existence before July 1, 1970, but not to grant to a minority owner the same privilege for its right of first refusal, a commonly used, entirely legal method for protecting one's ownership position.

As a reviewing court we are "not at liberty to set aside an agency's interpretation of its own regulations unless that interpretation is plainly inconsistent with the language of the regulations." *San Luis Obispo Mothers for Peace v. NRC,* 789 F.2d 26, 30 (D.C.Cir.1986) (*en banc*). *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Mercy Hospital of Laredo v.*

*Heckler,* 777 F.2d 1028 (5th Cir.1985). Whatever the merit of Marsh's policy arguments, we find nothing in pertinent legislation or the Rule which disposes of the issue whether a right of first refusal is an ownership interest for purposes of the grandfather clause. The Commission has been consistent in its interpretation of its Rule, and this interpretation is not plainly erroneous. We must therefore accord it "controlling weight."[5] *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (*quoting Bowles* ).[6]

*Constitutionality of the Rule and 47 U.S.C. § 533(a)*

■ Finally, Marsh and *amicus,* Freedom of Expression Foundation, argue that both the Rule and 47 U.S.C. § 533(a) violate Marsh's first amendment rights. This argument is foreclosed by the Supreme Court's decision in *FCC v. National Citizens Committee for Broadcasting* upholding, against a first amendment challenge, a rule of the Commission restricting cross-ownership of co-located daily newspapers and television stations.[7]

Marsh attempts to distinguish the *National Citizens Committee* case by arguing that the record there was significantly more developed. We are not persuaded. The Rule was the subject of three rulemaking procedures during which an extensive record was developed. To the extent that

---

**4.** Marsh's petition in No. 84–4808 asked the Commission to delete the Rule. We agree with the Commission that the 1984 Act deprived it of any discretion and authority in the matter.

**5.** Marsh's reliance on *Stauffer Publications, Inc.,* 25 Rad.Reg.2d (P & F) 111 (1972), involving the same TTA partnership agreement here at issue, is inapt. Stauffer sought and received from the Commission a temporary waiver of the 1970 regulation in order to acquire an additional 25% interest in TTA pursuant to its right of first refusal. The Commission granted Stauffer a temporary waiver until August 10, 1973. Although the issue of whether the right of first refusal was an ownership interest was not squarely presented, had the Commission then decided it was an ownership interest no temporary waiver would have been required. Marsh's claim that the Commission's interpretation of the grandfather clause has changed is inaccurate. *See also Meyer Broadcasting Co.,* 54 F.C.

C.2d 224 (1975); *McClatchey Newspapers,* 46 F.C.C.2d 987 (1974); *Kern Cable Co.,* 33 F.C.C.2d 823 (1971); *Gill Industries,* 33 F.C.C.2d 818 (1971) (all involving requests to increase ownership interests under the Rule).

**6.** Since Marsh's 1977 interest in TTA violated 47 C.F.R. § 76.501(a)(2) and is not grandfathered, it also violates 47 U.S.C. § 533(a) and is not grandfathered by 47 U.S.C. § 533(f) because it was inconsistent with that rule on July 1, 1984.

**7.** The recent decision in *City of Los Angeles v. Preferred Communications, Inc.,* — U.S. —, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986), provides Marsh no succor. Whatever the measure of first amendment protection to be accorded cable television systems, it would not be greater than that enjoyed by the newspaper publishers in *FCC v. National Citizens Committee for Broadcasting.*

the Rule is based on policy goals and educated "guestimates" by the Commission, we find no meaningful difference from the "judgmental or predictive" conclusions undergirding the divestiture order in *National Citizens Committee*, 436 U.S. at 813, 98 S.Ct. at 2121. *See also Achacoso Sanchez v. INS*, 779 F.2d 1260 (7th Cir.1985); *Air Products & Chemicals, Inc. v. FERC*, 650 F.2d 687 (5th Cir.1981).

### Conclusion

Concluding that the challenged orders are within the grant of authority to the Commission and that each is the product of a valid exercise of that authority, the petitions for review are DENIED.