**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy S. WISE, Defendant–
Appellant.**

No. 98–4271, 99–3672.

United States Court of Appeals,
Sixth Circuit.

Feb. 15, 2001.

Before KEITH, BOGGS, and COLE, Circuit Judges.

## OPINION

PER CURIAM.

Defendant–Appellant Timothy S. Wise ("Defendant") was convicted of three counts of aiding and abetting armed bank robbery, in violation of 18 U.S.C. §§ 2113(a)(d) and 2, and use of a firearm in connection with a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2. He appeals his conviction and sentence, raising the following issues: (1) whether the trial court erred in denying his motion for a continuance; (2) whether his convictions are against the weight of the evidence; and (3) whether the trial court erred in permitting the government to address matters outside the scope of cross-examination on redirect of one of the government's witnesses. For the foregoing reasons, we affirm the decision of the district court.

## I. BACKGROUND

### A. Factual History

At Defendant's trial, the government presented evidence that Defendant and Kentrell Lanier, a 17 year old, planned and

executed two armed bank robberies and one attempted armed bank robbery in Northern Ohio. According to Lanier's testimony at Defendant's trial, Lanier first met Defendant in early July, 1997. Defendant purchased crack cocaine from Lanier, and later casually mentioned that he had plans to rob a bank. Also at this first meeting, Defendant and Lanier struck a deal whereby Lanier agreed to rent Defendant's car. The car broke down shortly after Lanier took possession of it. Lanier contacted Defendant regarding the problem with the car, and in response Defendant told Lanier he would pick him up the following day for a job that would make them both a lot of money, and that Lanier should bring his gun.

On the morning of Monday, July 21, 1997, Defendant picked up Lanier at home in a rental car, and transported him to Defendant's home. There, Defendant revealed to Lanier his plan for robbing a bank that day in Stow, Ohio. The plan entailed Defendant driving Lanier, who would be in the trunk of the vehicle, to the target bank. At the bank, Defendant would open the trunk, and Lanier, armed with a weapon, would enter and rob the bank. Lanier would return to the vehicle, get in the trunk, and Defendant would drive them slowly from the scene. Defendant then provided Lanier with black clothes, a hat and a stocking to hide his face, and ammunition for Lanier's gun. The two executed successfully Defendant's plan. The pair made away with approximately $8,539.00, which they split.

On July 28, 1997, the two robbed a second bank, this one located in Mayfield Heights, Ohio, in a similar manner. This time, however, the bag holding the money also held a dye pack, which exploded just outside the bank. Lanier dropped the money and got into the trunk of Defendant's rental car. The two drove away.

Lanier told Defendant that he believed that a pedestrian had witnessed him get inside the trunk of the vehicle. In response. Defendant told Lanier to get out of the trunk and hide inside a dumpster. Lanier testified that he did not see Defendant again until September, as Defendant attended a program at the Indiana Job Corps Center from July 29, 1997 until approximately mid-September.

On September 18, 1997, Defendant brought Lanier to his home where they discussed another robbery. The two attempted a third robbery using essentially the same plan that had been successful twice previously. The target bank was located in Stow, Ohio, and was the same bank as in the first robbery. Unbeknownst to Defendant and Lanier, that bank had recently hired security. Lanier was arrested at the scene, and subsequently provided information to the FBI implicating the Defendant in the three robberies. Defendant was arrested on March 5, 1998 pursuant to an arrest warrant.

B. Procedural History

Defendant was indicted by a federal grand jury on April 8, 1998, and charged with three counts of aiding and abetting armed bank robbery in violation of 18 U.S.C. §§ 2113(a)(c) and 2, and three counts of use of a firearm to commit a crime of violence in violation of §§ 924(c)(1) and 2. At a pre-trial conference on June 5, 1998, the district court authorized the appointment of an investigator for the Defendant. The trial began on June 10, 1998, but resulted in a mistrial, as the jury was unable to reach a unanimous verdict. The district court set a new trial date of July 20, 1998.

The trial commenced as scheduled, with Lanier testifying as the government's main witness, implicating Defendant in the three robberies. Lanier described in detail the

planning and execution of the two robberies and the attempted robbery. Lanier's testimony was corroborated by telephone records, rental car records, and five witnesses, including Defendant's ex-girlfriend.

Defendant testified on his own behalf, and denied involvement in the robberies. He testified that on the day of the second robbery, July 28, 1997, he had traveled to Indiana to attend a program with the Indiana Job Corps. He admitted to transporting Lanier on the date of the attempted robbery, but was not aware of Lanier's intention to rob the bank.

On June 23, 1998, the jury reached a verdict, finding Defendant guilty on all six counts. On October 13, 1998, Defendant filed a motion for acquittal on Counts 4 and 6 of the indictment pursuant to Fed. R.Crim.P. 29, which the district court denied. On October 14, 1998, the district court sentenced Defendant to 610 months incarceration. On October 16, 1998, Defendant filed a faulty notice of appeal, which was dismissed. Defendant then filed a petition to vacate his sentence on March 26, 1999, pursuant to 28 U.S.C. § 2255. On April 20, 1999, the district court granted Defendant's petition and vacated his sentence, subject to re-sentencing. On May 19, 1999, the district court re-sentenced Defendant to the same term of imprisonment. Defendant filed a timely notice of appeal with this Court on May 21, 1999.

## II. DISCUSSION

### A. Motion for a Continuance

#### 1. *Standard of Review*

■ We review the district court's decision denying Defendant's motion for a continuance for an abuse of discretion. *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir.1984), *cert. denied*, 478 U.S. 1019, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986). "The decision to grant a continuance is a matter generally left to the sound discretion of the trial judge." *Id.; accord United States v. Allen*, 522 F.2d 1229, 1233 (6th Cir.1975), *cert. denied*, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976). "[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)(quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

#### 2. *Analysis*

■ Defendant argues that the district court abused its discretion when it denied his motion for a continuance. Defense counsel raised the motion at issue on June 22, 1998, at the end of Defendant's direct testimony. Defense counsel requested a continuance so that an alibi witness could be located and subpoenaed to appear. The district court denied the motion, noting that the issue should have been raised previously, as they were in the middle of Defendant's second trial.

Defendant alleges that, during his second trial, his investigator identified the gate guard who was on duty July 28, 1997, the date of the second robbery. Defendant had testified that he was in Indiana on that date, and alleges that the witness would have corroborated his testimony. Defendant argues that the alibi witness's testimony was "crucial to the Defendant to substantiate the date upon which he arrived at the Indiana Job Corp [sic] Center."

Defendant argues that the government "went to great lengths to prove that Wise was not in Indiana on July 28, 1997." At trial, the government presented the "sign

in" sheet from the Indiana Job Corps Center to show that Wise did not sign in until the late afternoon of July 29, 1997. Two witnesses from the Indiana Job Corps Center testified that Defendant did not arrive at the Center until July 29, 1997. Lanier testified that Defendant participated in the second bank robbery on July 28, 1997. Defendant's ex-girlfriend testified that the Defendant was with her the evening of July 28, 1997. She testified that he admitted to her that evening that he had robbed the bank earlier that day. Defendant argues that he should have been provided an opportunity to locate and subpoena the witness that would rebut the government's evidence and corroborate the Defendant's testimony.

Defendant relies on *Bennett v. Scroggy,* 793 F.2d 772, 776 (6th Cir.1986), where this Court held that a refusal to grant an overnight continuance so that the defendant could secure the attendance of an alibi witness was reversible error. There, this Court cautioned that "[f]ailure to grant a continuance to enable a defendant to exercise the right [to offer the testimony of witnesses and compel their attendance] is, under certain circumstances, a denial of due process." *Id.* at 774.

■ This Court considers the following list of factors in determining whether an accused was deprived of his rights to compulsory process and due process by a denial of a motion for continuance:

1. the diligence of the defense in interviewing witnesses and procuring their presence;
2. the probability of procuring their testimony within a reasonable time;
3. the specificity with which the defense is able to describe their expected knowledge or testimony;
4. the degree to which such testimony is expected to be favorable to the accused; and

5. the unique or cumulative nature of their testimony.

*Bennett,* 793 F.2d at 774 (quoting *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. 1981)). Applying this list to the facts before it, the *Bennett* Court concluded that the factors weighed in the defendant's favor, and that the denial of the continuance denied him his due process rights. There, the witness had been identified and subpoenaed by the defendant. *Id.* The government conceded that the continuance would be for a reasonable, brief period. *Id.* Defense counsel provided the court with the content of the witness's testimony, and offered to produce the witness's affidavit in lieu of his live testimony. *Id.* Finally, the government did not dispute that the witness's testimony was expected to be favorable to the defendant and would not be cumulative in nature. *Id.*

The facts presented in *Bennett* are clearly and immediately distinguishable from those presented here. The factors do not weigh in the Defendant's favor, and, notably, Defendant does not argue that they do. Defendant was apparently not diligent in interviewing witnesses and procuring their presence. Furthermore, there was no probability that the Defendant would have been able to even locate the witness, much less procure his testimony, within a reasonable time. While Defendant alleges that the witness would have corroborated Defendant's alibi, and that such testimony would be favorable to him, he has made no showing of what the witness's testimony would have been. In *Bennett,* the defendant's attorney had spoken to the witness, and offered to submit the witness's affidavit. 793 F.2d at 775. Before the district court, Defendant had nothing to offer except speculation.

We note that Defendant asked for a continuance prior to the first trial, and was

granted a partial continuance for investigative purposes. Defendant also sought a continuance prior to the start of the second trial. The district court addressed each of the Defendant's reasons for a continuance, including his desire to pursue witnesses and evidence, and concluded that a continuance was not justified. The district court stated at that time, "there was plenty of opportunity for you and your family and an investigator to pursue evidence, and if there was additional evidence to be had, then there was plenty of time before the first trial and before this trial to obtain it."

Defendant has failed to show that the district court abused its discretion in denying his request for a continuance. Consequently, we reject Defendant's first claim of error.

## B. Weight of Evidence

### 1. *Standard of Review*

 We review the district court's denial of a Fed.R.Crim.P. 33 motion for a new trial under an abuse of discretion standard. *United States v. Ashworth,* 836 F.2d 260, 266 (6th Cir.1988). Rule 33 states that "the [trial] court on motion of a defendant may grant a new trial if required in the interest of justice." Fed. R.Crim.P. 33. When considering a Rule 33 motion for a new trial based upon the weight of the evidence, district courts can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that he/she sits as a thirteenth juror." *United States v. Turner,* 490 F.Supp. 583, 593 (E.D.Mich.1979), *aff'd,* 633 F.2d 219 (6th Cir.1980). However, such motions "are not favored" and should only be granted "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Id.* "[O]ur role on appeal [is] to examine

the evidence to determine whether the district court's ruling was a clear and manifest abuse of discretion." *United States v. Hernandez,* 227 F.3d 686, 695 (6th Cir. 2000) (quoting *United States v. Lutz,* 154 F.3d 581, 589 (6th Cir.1998)).

We review *de novo* the denial of a motion under Fed.R.Crim.P. 29 for judgment of acquittal. *United States v. Keeton,* 101 F.3d 48, 52 (6th Cir.1996); *United States v. Gibson,* 896 F.2d 206, 209 (6th Cir.1990). Fed.R.Crim.P. 29 requires the district court to grant the motion if "the evidence is insufficient to sustain a conviction of such offense or offenses." The district court's denial of a Rule 29 motion is reviewed by this Court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord United States v. Lloyd,* 10 F.3d 1197, 1210 (6th Cir.1993).

### 2. *Analysis*

 Defendant contends that his convictions are against the weight of evidence. Defendant failed to move in the district court pursuant to Fed.R.Crim.P. 33 for a new trial based on the ground that the verdict was against the weight of the evidence. His failure to so move bars our consideration of the issue on appeal. *Hernandez,* 227 F.3d at 696.

 To the extent Defendant's brief can be read to challenge the district court's ruling on his Rule 29 motion, we may review this claim. In the district court, Defendant challenged his convictions with respect to Counts 4 and 6 of the indictment, use of a firearm in connection with a crime of violence in violation of 18 U.S.C. §§ 924(c)(1) and 2.[1] Defendant ar-

---

1. "In order to appeal a conviction based on

sufficiency of the evidence, a defendant must

gued that the testimony of Lanier, when considered with the Defendant's testimony and alibi, was insufficient to sustain the convictions. The district court rejected this argument. We conclude that the district court did not err in denying Defendant's Rule 29 motion.

Under federal law, the uncorroborated testimony of an accomplice is sufficient to sustain a verdict of guilty. *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985); *United States v. McCallie,* 554 F.2d 770, 771–72 (6th Cir.1977); *United States v. Ailstock,* 546 F.2d 1285, 1287–88 (6th Cir.1976); *Poliafico v. United States,* 237 F.2d 97, 115 (6th Cir.1956). At trial below, Lanier testified that he used his gun, loaded with bullets supplied by Defendant, in the first and second robberies. Lanier testified that he obtained a gun at Defendant's request for the third robbery, and that he showed Defendant that gun prior to the robbery. As we have stated previously. "[s]ufficiency-of-the-evidence appeals are 'no place...for arguments regarding a government witness's lack of credibility.'" *United States v. Hernandez,* 227 F.3d 686, 694–95 (6th Cir. 2000); *accord United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999), *cert. denied,* 526 U.S. 1137, 119 S.Ct. 1793, 143 L.Ed.2d 1020 (1999); *United States v. Adamo,* 742 F.2d 927, 934–35 (6th Cir.1984).

Defendant's trial counsel took full advantage of his opportunity to attack Lanier's credibility on cross-examination and during his closing argument. The jury was clearly able to assess Lanier's credibility at trial, and we conclude that, based on the evidence presented, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Consequently, we reject Defendant's second claim of error.

## C. Scope of the Government's Re–Direct

### 1. *Standard of Review*

We review the district court's decision to permit the government to cover matters not covered in its direct examination for an abuse of discretion. "[T]he conduct of a criminal trial is a matter within the discretion of the trial court and such discretion will not be disturbed in the absence of a clear showing of abuse." *United States v. Wilson,* 27 F.3d 1126, 1129 (6th Cir.1994); *accord United States v. Serio,* 440 F.2d 827, 831 (6th Cir.), *cert. denied,* 404 U.S. 838, 92 S.Ct. 129, 30 L.Ed.2d 71 (1971) (quoting *United States v. Wade,* 364 F.2d 931, 936 (6th Cir.1966)).

### 2. *Analysis*

Defendant argues that the district court erred in permitting the government to exceed the permissible scope of its redirect of Hilary Dolin, the government's witness and the Defendant's ex-girlfriend.

Following Defendant's cross-examination of Ms. Dolin, the government attempted to examine her on matters outside the scope of cross-examination. Specifically, the government asked the witness to identify a rental agreement for the car used in the two robberies. In response to the defense counsel's objection, the district

move for judgment of acquittal during trial or within seven days after the jury is discharged pursuant to Fed.R.Crim.P. 29." *United States v. Horry,* 49 F.3d 1178, 1179 (6th Cir.1995). Absent a manifest miscarriage of justice, a defendant's failure to move for a judgment of acquittal on a particular count constitutes a waiver of his right to challenge the sufficiency of the evidence on that count. *Id.* Here, Defendant limited his Rule 29 motion to Counts 4 and 6. Accordingly, because Defendant has not demonstrated a manifest miscarriage of justice, we are barred from considering his challenge to the sufficiency of the evidence on the remaining counts.

court held a side bar discussion with both attorneys. There, the district court stated "I understand that this is outside the bounds of cross. [The prosecutor] should have done some of this stuff on direct, but I am exercising my discretion to allow him to go back into some items that he obviously forgot to address on direct." The government then proceeded to obtain from Ms. Dolin her testimony regarding the car rental agreement.

 When a party seeks to reopen its proof, "[t]he district court judge must consider the party's explanation of failing to introduce the evidence earlier, the admissibility of the evidence, its relevance, and the degree to which the opposing party would be prejudiced by reopening the case." *Wilson*, 27 F.3d at 1129. In *United States v. Wilson*, this Court upheld the district court's denial of defendant's motion to reopen his case so that two witnesses, who came late to trial, could testify. *Id.* The *Wilson* Court noted that it would have been permissible for the district court to allow the testimony, but that it could not be said that it was an abuse of discretion to deny defendant's request. *Id.*

Similarly here, we cannot say that permitting the government to proceed was an abuse of discretion. The evidence was admissible and highly relevant. Moreover, there was no evidence of misconduct by the prosecutor; rather, he apparently forgot to address the exhibit in his direct. We disagree with Defendant that the witness's testimony was "very prejudicial" merely because the testimony served to further implicate the Defendant. We decline Defendant's invitation to find that a party may not reopen its proofs when the evidence it seeks to admit is not favorable to the other party.

The district court's decision to permit the government leeway in its re-direct was reasonable under the circumstances. Therefore, we reject Defendant's final claim of error.

## III. CONCLUSION

For the foregoing reasons, the order of the Honorable Kathleen O'Malley of the United States District Court for the Northern District of Ohio, Eastern Division is Affirmed.